1999 D.S.D. 34

**Robert HANSON, Plaintiff,**

v.

**NORTH STAR MUTUAL INSURANCE COMPANY, Defendant.**

**No. CIV. 99–3014.**

United States District Court,
D. South Dakota,
Central Division.

Nov. 12, 1999.

Lee C. "Kit" McCahren, Olinger, Lovald, Robbennolt, McCahren & Reimers, Pierre, SD, for Plaintiff.

Michael J. Schaffer, Davenport, Evans, Hurwitz & Smith, Sioux Falls, SD, for Defendant.

## ORDER GRANTING SUMMARY JUDGMENT

KORNMANN, District Judge.

## BACKGROUND

[¶ 1] On May 10, 1997, defendant North Star Mutual Insurance Company ("North Star"), issued a renewal of a so-called farmowners (sic) insurance policy to the plaintiff, Robert Hanson ("Hanson"). The policy provided coverage for Section 34, Township 112, Range 71, in Hyde County, South Dakota. No one resided on the property insured by North Star. Instead, Hanson resided in a mobile home on land (not on Section 34) located a mile north of the North Star insured premises. Hanson's residential property was insured by Central Farm Mutual, the status of which is uncertain to the Court. Such policy apparently did not provide, in any event, any liability coverage. What motor vehicle policy or policies Hanson had is also not in the record.

[¶ 2] On August 2, 1997, Beverly Reisdorff and her ten year old daughter, Elizabeth Reisdorff ("Elizabeth"), visited Hanson's mobile home to use his computer for a 4–H project. Neither of the Reisdorffs were performing duties for Hanson nor were they Hanson's employees. While at Hanson's mobile home, Elizabeth asked to use his Polaris four-wheeler and Hanson granted permission. The four-wheeler motor has a 300 cubic inch displacement (which would allow the vehicle to be registered as a motor vehicle in South Dakota because of the displacement), was normally kept at Hanson's residence, and was generally used to travel to fields or similar activities. Hanson did not ever actually register the vehicle so it could be legally operated on public highways. Hanson never informed North Star or his North Star insurance agent about the four-wheeler.

[¶ 3] Elizabeth drove the four wheeler from Hanson's home to the farm land insured by North Star. While returning to Hanson's home, Elizabeth drove the vehicle on a county gravel road. She lost control of the vehicle, went into a ditch, then went through or over a woven wire fence where the vehicle tipped over and Elizabeth was injured. The tip-over and personal injuries occurred on ranch land which was part of the Eagle Pass Ranch, property which is not owned or controlled in any manner by Hanson.

[¶ 4] After learning of the claim, North Star had its adjuster investigate the claim and take a statement from Hanson. Hanson told the adjuster about the events surrounding the accident, consistent with what is set forth above. Based on the adjuster's investigation, North Star denied coverage on the basis that Hanson's policy did not contain a so-called incidental motorized vehicle endorsement and, in addition, the accident had occurred off the insured premises. Approximately two weeks after the accident, Hanson purchased a special endorsement to the North Star policy for incidental motorized vehicle coverage to add the four wheeler.

[¶ 5] In November of 1997, Hanson was sued in South Dakota Circuit Court, Hyde County, for Elizabeth's injuries and her mother's payment of the medical bills. The complaint alleged that Hanson had been negligent in entrusting the four-wheeler to Elizabeth. Hanson, through counsel, contended that the lawsuit was covered by the North Star policy. Hanson claimed that the alleged negligent entrustment, if any, occurred on the insured premises (which is clearly not accurate since the entrustment occurred at the mobile home site) and, therefore, according to Hanson the place of the personal injuries was not material. In this same letter, the defense of the state court action was tendered to North Star. The tender was rejected. In March of 1999, Hanson entered into a stipulation with Elizabeth's mother, individually (the mother being the party responsible for Elizabeth's medical bills) and as guardian ad litem for Elizabeth, agreeing to pay $15,592.84 for medical expenses. In exchange, the lawsuit against Hanson would not be pursued unless his insurance would ultimately cover the matter. North Star had no participation in such stipulation.

[¶ 6] Hanson instituted this action on May 13, 1999, asserting jurisdiction pursuant to 28 U.S.C. § 1332. In his complaint, Hanson alleged that North Star acted in bad faith by denying coverage and failing to defend the Reisdorff lawsuit in state court. North Star filed a counterclaim for a declaratory judgment and later a motion for summary judgment, Doc. 10. North Star claims it is entitled to summary judgment because Hanson has failed to show any bad faith. Specifically, North Star argues that bad faith cannot exist since the insurance policy clearly and unambiguously does not cover the claim, this claim being excluded under the express and unambiguous terms of the policy.

[¶ 7] North Star filed a statement of undisputed material facts (Doc. 12). Hanson did not file any "separate, short, and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried" as permitted by D.S.D.LR 56.1(C). "All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." D.S.D.LR 56.1(D). Thus, all facts set forth in Doc. 12 are established for the purpose of the summary judgment motion under consideration.

### DECISION

[¶ 8] Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Donaho v. FMC Corp.*, 74 F.3d 894, 898 (8th Cir.1996). The United States Supreme Court has held that:

> The plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265

(1986). "A material fact dispute is genuine if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." *Landon v. Northwest Airlines, Inc.*, 72 F.3d 620, 624 (8th Cir. 1995). In considering the motion for summary judgment, this Court must view the facts in the light most favorable to Hanson and give Hanson the benefit of all reasonable inferences that can be drawn from the facts. *Donaho*, 74 F.3d at 897–898.

## I. Defending the Lawsuit

[¶ 9] Hanson argues that North Star had a duty to defend the Reisdorff lawsuit in state court and failure to do so is bad faith. In support of his argument, Hanson cites *North Star Mut. Ins. Co. v. Kneen:* "[I]f it is clear or arguably appears from the face of the pleadings in the action against the insured that the alleged claim, if true, falls within policy coverage, the insurer must defend." 484 N.W.2d 908, 912 (S.D.1992). In response, North Star argues that the insurance policy clearly did not cover the claim; therefore, bad faith cannot exist. *See Stene v. State Farm Mutual Auto. Ins.*, 583 N.W.2d 399, 403 (S.D.1998).

[¶ 10] North Star has the burden of showing that it had no duty to defend Hanson and that the claim clearly falls outside of coverage provided by the policy. *North Star Mut. Ins. Co. v. Kneen, supra*, at 912, *citing City of Fort Pierre v. United Fire & Cas. Co.*, 463 N.W.2d 845, 847 (S.D.1990), *Bayer v. Employers Reinsurance Corp.*, 383 N.W.2d 858, 861 (S.D. 1986), and *Hawkeye–Security Ins. Co. v. Clifford*, 366 N.W.2d 489, 492 (S.D.1985)). "If, after considering the complaint and where appropriate, other evidence of record, doubt exists whether the claim against the insured arguably falls withing the policy coverage, such doubts must be resolved in favor of the insured." *Id.* For the purposes of interpreting insurance polices, state law governs. *TNT Speed & Sport Ctr., Inc. v. Am. States Ins. Co.*, 114 F.3d 731, 732 (8th Cir.1997). South Dakota law controls matters of substantive law in this action.

[¶ 11] North Star argues that the claim is not covered by the insurance policy because the policy specifically excludes coverage for bodily injury resulting from the use or entrusting of motorized vehicles absent an incidental motorized vehicle endorsement. The Reisdorff claims and lawsuit were about claimed negligent entrustment and nothing else. The policy explicitly states:

This policy does not apply to:

\* \* \* \* \* \*

3. **bodily injury** or **property damage** which results directly or indirectly from the ownership, operation, maintenance, use, occupancy, renting, loaning, entrusting, supervision, loading or unloading of **motorized vehicles** or watercraft owned, operated, or used by, or rented or loaned to an **insured. We** do pay:

a. for **bodily injury** to a person in the course of performing duties as a **domestic employee;** or

b. if coverage is provided for by an Incidental Motorized Vehicle or Watercraft Coverage;

\* \* \* \* \* \*

5. **bodily injury** or property damage which results from liability imposed by law upon an **insured** for the use of a **motorized vehicle**, aircraft or watercraft, except if coverage is provided by an Incidental Motorized Vehicle or Watercraft Coverage.

Schaffer affidavit, exhibit B, policy form NS–3, page 10 (emphasis in original).

[¶ 12] The language set forth above is found in a section of the policy entitled **"EXCLUSIONS THAT APPLY TO LIABILITY COVERAGES."** Beneath this heading is the following subheading: **"EXCLUSIONS THAT APPLY TO COVERAGES L AND M."** The significance of this will be discussed later in this opinion.

[¶ 13] The policy defines a motorized vehicle as "a self-propelled land or amphibious vehicle regardless of method of sur-

face contact." *Id.* at page 3. This is, of course, a very broad definition and common sense tells us that the definition includes four-wheelers. Although this Court was unable to find South Dakota case law specifically holding that a four-wheeler is a motorized vehicle, it is clear from the case of *Olson v. United States Fidelity & Guar. Co.,* that a four-wheeler is a motorized vehicle as defined in Hanson's policy. 549 N.W.2d 199 (S.D.1996). In *Olson,* the court found that a forklift was included within the definition of a motorized land vehicle. The forklift was motorized, had a gasoline or diesel engine, was outfitted with brakes and a steering wheel, and was designed for use on land. *Id.* The Court held that, "a motorized conveyance or vehicle is reasonably understood to mean a machine that is equipped with a motor." *Id.* at 201. Similarly, the Polaris four-wheeler in this case is motorized, has an engine, is outfitted with brakes and a steering wheel, and is designed for land use. Therefore, the exclusions in paragraphs three and five set forth above are unambiguous and apply unless there is an exception to the exclusions which exception is found within the policy itself.

[¶ 14] The policy does describe what would be covered if the so-called "incidental motorized vehicle" coverage is purchased and this would be a limited exception to the motorized vehicle exclusions set forth above. An applicable portion of the policy's "incidental liability coverage" provides:

5. **Motorized Vehicles—We** pay for the **bodily injury** or **property damage** which:

  a. occurs on the **insured premises** and is a result of the ownership, maintenance, use, loading or unloading of:

    1) a **motorized vehicle** if it is not subject to **motor vehicle** registration because of its type of use; or

    2) a **recreational motor vehicle;**

  b. results from:

    1) a golf cart while used for golfing;

    2) a utility, boat, camp or mobile home trailer, except when the trail-er is carried on, is towed by or is attached to a **motor vehicle** or a **recreational motor vehicle;** or

    3) a **motorized vehicle** which is designed only for use off public roads and which is used mainly to service the **insured premises;**

  c. results from an **insured's** use of a **recreational motor vehicle** which is not owned by an **insured.**

Schaffer affidavit, exhibit B, policy form NS–3, page 9 (emphasis in original).

[¶ 15] There is neither an "and" nor an "or" between 5.a. and 5.b. and the Court therefore, to construe the policy in favor of the insured, construes the provisions as alternatively providing coverage. Looking at the language above, 5.a.(1) could have no possible application since the four-wheeler was "subject to motor vehicle registration because of its type * * *." *See* SDCL 32–5–1.4. In addition, 5.a.(1) could not possibly apply since the "bodily injury", as we have already discussed and will discuss later, did not occur "on the insured premises." The "bodily injury" must occur on the insured premises and this language is clear and unambiguous.

[¶ 16] Again looking at the policy language just above, 5.b.(3) could have possible application since it applies to bodily injury that results from "a motorized vehicle which is designed only for use off public roads and which is used mainly to service the insured premises." North Star argues that the four-wheeler is not designed *only* for use off public roads, especially as evidenced by the fact that just prior to the accident it was being operated on a public road. The Court rejects this argument. The manufacturer designed the vehicle and has unequivocally set forth the purpose of the design in several statements in the owner's manual. Owners are told several times to not operate the vehicle on public roads. The Court is now satisfied that, regardless of actual uses (or misuses) made of the vehicle, the vehicle was, as clearly shown by the owner's manual published by the manufacturer, "designed

only for use off-public roads". Who, other than the manufacturer and designer, would know better the purpose for which the vehicle was "designed"? If North Star had intended to deal with actual usage or even principal usage as compared with the design, the policy would have been so written. Thus, coverage would have been available under 5.b.(3) and under no other provision of 5.a. or 5.b. had the "extra coverage" been purchased.

[¶ 17] To return to a discussion as to "insured premises", the policy defines "insured premises" applicable to the present situation as:

    1) other premises shown on the Declarations;

    2) that part of a residential premises acquired and to be used by you while this policy is in effect;

    3) all vacant land owned by or rented to an **insured**. This includes land where a residence is being built for the use of an **insured**. This does not include farm land;

    4) **your** cemetery lots and burial vaults or those of **your** resident relatives;

    5) that part of residential premises, not owned by an **insured**, while temporarily used by an **insured**;

    6) premises used by **you** in connection with the described location;

    7) all access ways immediately adjoining the **insured premises**; and

    8) that part of premises occasionally rented to an **insured** for other than **business** purposes.

Schaffer affidavit, exhibit B, policy form NS–3, page 2, paragraph 7.b.

■ [¶ 18] The only "insured premises" provisions that could have any possible application would be 7.b.(6) and 7.b.(7). There is apparently no case law in South Dakota addressing provision 7.b.(6) or a similar provision but case law from other states indicates that the place where Elizabeth's injuries occurred was not being used "in connection with the described location." Hanson informed the insurance adjuster that Elizabeth was traveling on a county road, traveling away from his in-

sured land and toward his mobile home. Schaffer affidavit, exhibit C, pages 2–3. Only one of the farmsteads was insured by North Star. Hanson also explained where the actual tip-over and injuries occurred: "On property not of my own. It's Eagle Pass Ranch property." Schaffer affidavit, exhibit A, Hanson deposition at page 24.

[¶ 19] In *Ill. Farmers Ins. Co. v. Coppa,* involving a similar provision, although in a homeowner's policy, the court held that "'insured location' was not meant to describe adjacent, non-owned land on which an ATV might be used. The hayfield [where the accident occurred] is not part of the resident premises and is not 'used in connection with' such premises as are approaches or easements of ingress to or egress from the property." 494 N.W.2d 503, 506 (Minn.App. 1993). The Court further reasoned, "[i]t is not reasonable to expect that every field or pathway in the neighborhood leading to the insured's residence is property 'used in connection with' the residence." *Id.* Similarly, in this case, the actual accident and bodily injuries occurred on property not owned or used by Hanson and the property was never identified as property even claimed to be used as an easement. *See also United Serv. Auto. Assoc. v. Parry,* 158 Ariz. 83, 761 P.2d 157 (App.1988) (finding that water basin where go-cart accident occurred which was owned and under the control of the subdivision and not the individual homeowners and located at a distance from the plaintiff's insured residence could not be construed as premises used in connection with the premises of the homeowners).

■ [¶ 20] Likewise, provision 7.b.(7) does not apply in this case. First, the actual accident or "tip-over" did not occur on an access way, but instead on property known as Eagle Pass Ranch. (Schaffer affidavit, exhibit A, Hanson deposition at page 24.) Second, even assuming that the accident occurred on the county road on which Elizabeth had been traveling, such "fact" does not bring the claims within the policy's

coverage. In *United States Fire Ins. Co. v. Schnackenberg,* the Court interpreted the phrase "ways immediately adjoining" and held:

> It is generally agreed that the term "adjacent" means "near" or "close to," that the term "adjoining," although more restrictive than the term "adjacent," has often been loosely used interchangeably with it, but that when the word "immediately" modifies "adjacent" or "adjoining," definite contact is meant, allowing no intervening space.

88 Ill.2d 1, 57 Ill.Dec. 840, 429 N.E.2d 1203, 1207 (1981). It is an undisputed fact that the accident did not occur on property with no intervening space between the place of the accident and the actual insured premises. Clearly, there was intervening space. Elizabeth was traveling away from the insured farmland and she was closest to the Eagle Pass Ranch as she drove down the highway. The place of the accident was not in definite contact with the insured land. (Schaffer affidavit, exhibit A, Hanson deposition, at pages 24–25.) *See also Am. Family Mut. Ins. Co. v. Bishop,* 743 S.W.2d 590, 592 (Mo.App.1988) (finding accident occurred on "insured premises" when "accident was caused by action which occurred in front of [plaintiff's] house and resulting injury ensured on property *directly* across the street from [plaintiff's] house.") (emphasis added).

[¶ 21] In *Jones v. Horace Mann Ins. Co.,* the court held that an accident occurring on a public road, four-tenths of a mile from the policy owner's residence did not occur on "insured premises." 937 P.2d 1360, 1364 (Alaska 1997). The court reasoned that if the place of the accident was considered "insured premises" there would be "no geographical limit" to coverage under the homeowner's policy. *Id.* at 1364–65. *See also Mahlum v. Baker,* 639 So.2d 820, 823–24 (La.App.1994) (finding public thoroughfare does not comprise part of insured premises or ways immediately adjoining) and *Farm Bureau Mut. Ins. Co. v. Kurtenbach,* 265 Kan. 465, 961 P.2d 53, 57–8 (1998) (finding a public highway was part of the "insured premises" when plaintiff owned and rented land on *both sides* of the highway and the vehicle was being used in farming operations at the time of the accident.) (emphasis added).

[¶ 22] Of primary importance, the bodily injuries, as already stated, occurred only after Elizabeth had crossed the fence separating the county road from another ranch and her bodily injuries were sustained only on the Eagle Pass Ranch.

[¶ 23] In an abundance of caution, the Court has also carefully read 7.b.(2) of the description of "insured premises" found on page 2 of policy form NS–3. Thus, insured premises includes "that part of a residential premises acquired and to be used by you while this policy is in effect." The record does not reflect when Hanson acquired his mobile home or whether it was acquired during any policy period. This is, in any event, immaterial since the bodily injuries must occur on insured premises and no one sustained any bodily injuries at Hanson's mobile home site.

[¶ 24] Even assuming that the bodily injuries could somehow be argued to have occurred on Hanson's "insured premises", there is another very important factor which the Court must consider. In North Star's statement of undisputed material facts, it is stated that the accident "occurred off the insured premises", according to Hanson's statement and his deposition. See paragraphs 27 and 28 of Doc. 12. As previously stated, this is undisputed by Hanson at this time and must be taken to be true. This is despite the fact that Hanson argues in his brief (Doc. 16 at page 6) that Hanson's alleged negligence "actually occurred on Mr. Hanson's premises." Mere allegations mean nothing in the face of a summary judgment motion.

[¶ 25] Other than to attempt to carefully detail what the Court has considered in connection with the motion for a summary judgment, much of the above discussion about possible incidental motorized vehicle coverage is "much ado about nothing" since Hanson did not pay a premium or request "incidental motorized vehicle" cov-

erage prior to Elizabeth's accident. One might wonder why numbered paragraph 5 (found on page 9 of NS–3) which is a part of the section of the policy entitled "**LIABILITY COVERAGES**" which paragraph 5 comes under the sub-part "**INCIDENTAL LIABILITY COVERAGES**" (see page 8 of NS–3) was placed in the policy itself rather than in an endorsement to be added and attached when and if the coverage is purchased by an insured. Nevertheless, it is clear that the "**EXCLUSIONS THAT APPLY TO LIABILITY COVERAGES**" (see page 10 of NS–3) apply equally to Coverage L dealing with personal liability, to Coverage M dealing with medical payments to others, and to all but one of the so-called incidental liability coverages. All are specifically classified under "**LIABILITY COVERAGES.**" It is certainly of some significance that numbered paragraph 1 of the incidental liability coverages (found on page 8 of NS–3), dealing with damage to property of others, includes this statement: "The exclusions that apply to Coverages L and M do not apply to this coverage. However, we do not pay for damage to property." No such language excluding the liability exclusions (that apply to coverages L and M) is found in any of the six other numbered paragraphs of the incidental liability coverages and, of most importance, no such language is found after 5.b.(3) of the incidental liability coverages, this dealing with motorized vehicles. Thus, the exclusion found at numbered paragraph 3 on page 10 of NS–3 clearly and unambiguously overrides the incidental liability coverages (other than the coverage as to damage to property of others and there is no issue before the Court dealing with damage to property of others). In the words of the exclusion, the policy does not apply to "bodily injury* * *which results directly or indirectly from the * * * entrusting * * * of motorized vehicles" and the exclusion also provides a clear "warning" that North Star would only pay for bodily injury "if coverage is provided by an Incidental Motorized Vehicle* * *Coverage." See 3.b. on page 10 of NS–3. A further exclusion and warning to Hanson is further clearly set forth at numbered paragraph 5 on the same page, namely that the policy does not apply to "bodily injury * * *which results from liability imposed by law on an insured for the use of a motorized vehicle* * *except if coverage is provided for by an Incidental Motorized Vehicle* * *Coverage." Because of these clear exclusions, there can be and was no coverage under 5.b.(3) (found at page 9 of NS–3).

[¶ 26] Resolving all doubts in favor of Hanson, the insured, and with North Star carrying the burden of showing that it clearly had no duty to defend Hanson since the claims clearly fall outside the coverage of the policy, the Court finds no genuine issue of material fact. Summary judgment should be granted in favor of North Star as to defending the lawsuit.

## II. Denying Coverage

[¶ 27] Based on the discussion above the Court finds no genuine issue as to any material fact concerning North Star denying coverage. Summary judgment should be granted in favor of North Star as to denying coverage.

## ORDER

[¶ 28] IT IS ORDERED, that North Star's motion for summary judgment, Doc. 10, should be and the same is hereby granted.

[¶ 29] IT IS FURTHER ORDERED that no costs are to be taxed.

[¶ 30] Dated this 10th day of November, 1999.