MEMORANDUM DECISION AND ORDER
 

 KORNMANN, District Judge.
 

 BACKGROUND
 

 [¶ 1] Plaintiff Gloria Serocki (“Serocki”) commenced this wrongful death action by serving upon defendant MeritCare Health System (“Meritcare”) a summons and complaint on May 20, 2003. The action was originally brought in Roberts County, South Dakota, the county of Serocki’s residence. MeritCare timely removed the case to the Northern Division of the District of South Dakota. On July 25, 2003, MeritCare moved to transfer the case to the District of North Dakota based on 28 U.S.C. § 1404(a). This court entered an order denying that motion on September 23, 2003. MeritCare now moves this court for an order dismissing plaintiffs complaint pursuant to Fed.R.Civ.P. 12(c) and 56.
 

 [¶ 2] Serocki is the surviving wife of the decedent, Jerome A. Serocki (“Jerome”). Both Serocki and her husband were residents of rural Sisseton, Roberts County, South Dakota, at the time of Jerome’s death. On October 31, 2001, Jerome began to experience chest and back pain, shortness of breath, and other physical symptoms while assisting a neighbor. He was transported to the Coteau Des Prairies Hospital in Sisseton. Dr. VanPeur-sem evaluated Jerome once he arrived at the hospital. Fearing a coronary event, VanPeursem consulted with MeritCare’s cardiology department. Jerome was then transported from Sisseton to MeritCare’s facility in Fargo, North Dakota via Life Flight under the direction, supervision, and control of MeritCare.
 

 [¶ 3] Once at Meritcare, Jerome received a cardiology work-up. According to Ser-ocki’s complaint, the initial laboratory results were normal except for an elevated Creatinine level. A selective coronary ar-teriography “revealed normal and patent coronary arteries which appeared to be sizeable” and “no obstructive lesions of any kind were seen.” A echocardiogram was then performed. It indicated that the “[a]ortic valve was not well seen but appeared grossly normal.” Although difficult to evaluate, it was concluded that there was probably “mild aortic regurgitation.” Jerome’s heart function was determined to be essentially normal and he was discharged the next day, November 1, 2001.
 

 
 *MCCXLV
 
 [¶ 4] After returning from the evaluation, Serocki alleges that Jerome continued to experience chest pain and other physical symptoms similar to those he had when he was originally admitted at MeritCare. At some point after returning home, Jerome laid down to rest. Serocki alleges that she heard some gurgling noise and discovered that Jerome was unresponsive and blue. He died shortly thereafter. An autopsy revealed that Jerome died from a dissecting aortic aneurysm.
 

 DECISION
 

 I. Governing Standards
 

 [¶ 5] Judgment on the pleadings under Fed.R.Civ.P. 12(e) is properly granted only where the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law.
 
 National Car Rental System, Inc. v. Computer Assocs. Int’l. Inc.,
 
 991 F.2d 426, 428 (8th Cir.1993). “This court must accept as true all facts pled by the non-moving party, and grant all reasonable inferences from the pleadings in the non-moving party’s favor.”
 
 Id.
 
 The Court “is required to construe all well pleaded factual allegations of the non-moving party as true, and to draw in favor of that party all reasonable inferences from these facts.”
 
 Iowa Beef Processors, Inc. v. Amalgamated Meat Cutters and Butcher Workmen of North America, AFL-CIO,
 
 627 F.2d 853, 855 (8th Cir.1980). The United States Court of Appeals for the Eighth Circuit has held:
 

 When considering a motion for judgment on the pleadings, the court generally must ignore materials outside the pleadings, but it may consider “some materials that are part of the public record or do not contradict the complaint,”
 
 Missouri ex rel. Nixon v. Coeur D'Alene Tribe,
 
 164 F.3d 1102, 1107 (8th Cir.),
 
 cert. denied,
 
 527 U.S. 1039, 119 S.Ct. 2400, 144 L.Ed.2d 799 (1999), as well as materials that are “necessarily embraced by the pleadings.”
 
 Piper Jaffray Cos. v. National Union Fire Ins. Co.,
 
 967 F.Supp. 1148, 1152 (D.Minn.1997).
 
 See also
 
 5A Charles A. Wright & Arthur R. Miller,
 
 Federal Practice and Procedure: Civil 2d
 
 § 1357, at 299 (1990) (court may consider “matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint”).
 

 Porous Media Corp. v. Pall Corp.,
 
 186 F.3d 1077, 1079 (8th Cir.1999), rehearing and rehearing en banc denied (Sept. 8, 1999).
 

 [¶ 6] The summary judgment standard is well known and has been set forth by this court in numerous opinions.
 
 See Hanson v. North Star Mutual Insurance Co.,
 
 1999 DSD 34 ¶ 8, 71 F.Supp.2d 1007, 1009-1010 (D.S.D.1999),
 
 Gardner v. Tripp County,
 
 1998 DSD 38 ¶ 8, 66 F.Supp.2d 1094, 1098 (D.S.D.1998),
 
 Patterson Farm, Inc. v. City of Britton,
 
 1998 DSD 34 ¶ 7, 22 F.Supp.2d 1085, 1088-89 (D.S.D.1998), and
 
 Smith v. Horton Industries,
 
 1998 DSD 26 ¶ 2, 17 F.Supp.2d 1094, 1095 (D.S.D.1998). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R. Civ.P. 56(c);
 
 Donaho v. FMC Corp.,
 
 74 F.3d 894, 898 (8th Cir.1996). “Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate.”
 
 Mansker v. TMG Life Ins. Co.,
 
 54 F.3d 1322, 1326 (8th Cir.1995). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party.
 
 Donaho,
 
 74 F.3d at 898. Defendant contends that, regardless of which standard is applied, the motion is made pursuant to specific statutory authority and this court should make its determination based upon that provision.
 

 
 *MCCXLVI
 
 II. Governing Law
 

 [¶ 7] The parties disagree over whether North Dakota or South Dakota substantive law controls the resolution of the issues in this case. MeritCare argues that North Dakota law applies and, as such, the application of N.D. Cent.Code § 28-01-46 requires the dismissal of plaintiffs complaint. Serocki contends that there is no conflict because § 28-01-46 is nothing more than a procedural hurdle. Serocki suggests, alternatively, that a conflict of laws analysis would result in the application of South Dakota law.
 

 [¶ 8] The conflict of law that is said to exist in this case is the result of North Dakota’s expert affidavit statute, § 28-01-46, which provides:
 

 Any action for injury or death against a physician, nurse, or hospital licensed by this state based upon professional negligence must be dismissed without prejudice on motion unless the
 
 claimant has obtained an admissible expert opinion
 
 to support the allegation of professional negligence within three months of the commencement of the action or at such later date as set by the court for good cause shown by the plaintiff. The expert’s affidavit must identify the name and business address of the expert, indicate the expert’s field of expertise, and contain a brief summary of the basis for the expert’s opinion. This section does not apply to alleged lack of informed consent, unintentional failure to remove a foreign substance from within the body of a patient, or performance of a medical procedure upon the wrong patient, organ, limb, or other part of the patient’s body, or other obvious occurrence (emphasis supplied).
 

 [¶ 9] South Dakota does not have a similar statute. This statute was allegedly designed to minimize frivolous claims against physicians, nurses, and hospitals by avoiding the necessity of a trial in an action based upon professional negligence unless the plaintiff obtains an expert opinion to substantiate the allegations of negligence.
 
 See Heimer v. Privratsky,
 
 434 N.W.2d 357, 359 (N.D.1989), and
 
 Fortier v. Traynor,
 
 330 N.W.2d 513, 516 (N.D.1983). The Eighth Circuit has considered cases where the United States District Court for the District of North Dakota applied § 28-01-46 in diversity actions.
 
 See e.g. Weasel v. St. Alexius Med. Ctr.,
 
 230 F.3d 348 (8th Cir.2000), and
 
 Maguire v. Taylor,
 
 940 F.2d 375 (8th Cir.1991). However, the plaintiffs in those cases failed to raise the issue of whether the disclosure provisions of § 28-01-46 apply in federal courts sitting in diversity. They also may have failed to raise the issue as to what the statute requires. The issues presented here have apparently not been decided in the Eighth Circuit.
 

 [¶ 10] The first task for any court is to read the statute and determine what it provides and what it does not provide. It is not the function of a court to re-write a statute. Nowhere in this statute does it require a plaintiff to
 
 disclose or file
 
 any “admissible expert opinion.” In some other cases, the courts and apparently the parties have simply assumed that something must be filed. I decline to read that language into the statute. I fail to understand how the opinion, when obtained by the plaintiff, could be determined to be “admissible.” To be “admissible” would indicate that a court has made such a determination. Otherwise, the plaintiff apparently is to decide when obtaining the opinion whether or not it is admissible. If it ultimately turns out to be inadmissible as determined by the court, is the action then to be dismissed in the middle of trial? In addition, a written opinion is not “admissible” and would not be provided to the jury. Only the oral opinions of the expert
 
 *MCCXLVII
 
 testifying under oath and subject to cross examination could be considered.
 

 [¶ 11] It is true that the statute jumps from obtaining an “opinion” to speaking of the “expert’s affidavit.” In short, it is clear that, even under North Dakota law, plaintiff had no statutory obligation to disclose or file any expert opinion. A court should be especially careful to not impose requirements not found in a statute where the consequences of judicially adding the language would result in the action being dismissed. Certainly, the North Dakota Legislature would know how to require filing and disclosure, had the Legislature wished to do so. Assuming this statute has any application in federal court, I decline to amend this statute.
 

 [¶ 12] There is a further reason why the statute, if it applies in federal court, cannot be used to dismiss this action. Plaintiffs attorney has filed an affidavit (Doc. 26) setting forth,
 
 inter alia,
 
 that he had obtained the required expert opinion before starting the lawsuit. He sets forth that he filed nothing because the statute does not require anything to be filed. As set forth above, I agree with that reading of the statute. Plaintiffs attorney also sets forth that he obtained two other expert opinions supporting plaintiffs case. Thus, it is clear that this action was not filed before the opinion was obtained. The claimed goal of the statute, preventing frivolous claims for medical malpractice, has been met. Certainly, it would have been preferable for plaintiffs counsel to have reduced the expert opinion to an affidavit and filed it. However, he was not required by law to do so.
 

 [¶ 13] Assuming, however, that the statute would require filing and disclosure based on North Dakota law, the statute still should not be applied in this action, for reasons which will hereafter appear.
 

 [¶ 14] Plaintiff argues that, even assuming that North Dakota law governs this action, her complaint should not be dismissed because § 28-01-46 is procedural rather than substantive under
 
 Erie R.R. Co. v. Tompkins,
 
 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and its progeny.
 
 Erie
 
 held that federal courts sitting in diversity cases, when deciding questions of “substantive” law, are bound by state court decisions as well as state statutes.
 
 Hanna v. Plumer,
 
 380 U.S. 460, 465, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). The traditional
 
 Erie
 
 analysis, as it has developed, involves a
 
 determination of
 
 whether the law is to be classified as “substantive” or “procedural,” a determination which can be a challenging endeavor. In an effort to guide federal courts, the Supreme Court created the “outcome-determination” test.
 
 Gasperini v. Center for Humanities, Inc.,
 
 518 U.S. 415, 427, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996) (citing
 
 Guaranty Trust Co. v. York,
 
 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945)). The question asked under the outcome-determination test is “[d]oes it significantly affect the result of a litigation for a federal court to disregard a law of a State that would be controlling in an action upon the same claim by the same parties in a State court?”
 
 Guaranty Trust Co.,
 
 326 U.S. at 109, 65 S.Ct. 1464. “[T]he ‘outcome-determination’ test must not be applied mechanically to sweep in all manner of variations; instead, its application must be guided by ‘the twin aims of the
 
 Erie
 
 rule: discouragement of forumshop-ping and avoidance of inequitable administration of the laws.’ ”
 
 Gasperini,
 
 518 U.S. at 428, 116 S.Ct. 2211 (quoting
 
 Hanna,
 
 380 U.S. at 468, 85 S.Ct. 1136).
 

 [¶ 15] Plaintiffs argument in this regard is compelling. As plaintiff pointed out, although § 28-01-46 has an outcome-determinative effect in this case if applied at this juncture, that is not the proper test. As the Supreme Court explained in
 
 Hanna,
 
 the proper consideration is whether the decision to disregard § 28-01-46 would
 
 *MCCXLVIII
 
 have any relevance to a party’s choice in selecting a fornm.
 

 The difference between the conclusion that the Massachusetts rule is applicable, and the conclusion that it is not, is of course at this point “outcome-determinative” in the sense that if we hold the state rule to apply, respondent prevails, whereas if we hold that Rule 4(d)(1) governs, the litigation will continue. But in this sense
 
 every
 
 procedural variation is “outcome-determinative.” For example, having brought suit in a federal court, a plaintiff cannot then insist on the right to file subsequent pleadings in accord with the time limits applicable in the state courts, even though enforcement of the federal timetable will, if he continues to insist that he must meet only the state time limit, result in determination of the controversy against him. So it is here. Though choice of the federal or state rule will at this point have a marked effect upon the outcome of the litigation, the difference between the two rules would be of scant, if any, relevance to the choice of a forum. Petitioner, in choosing her forum, was not presented with a situation where application of the state rule would wholly bar recovery; rather, adherence to the state rule would have resulted only in altering the way in which process was served.
 

 Id.
 
 at 468-69, 85 S.Ct. 1136.
 

 [¶ 16] In choosing a forum, medical malpractice plaintiffs are not presented with a situation where § 28-01-46 bars recovery from the onset. Rather, § 28-01-46 has the effect of possibly altering the timing of expert disclosures or at least the obtaining of the expert opinions. In this respect, § 28-01-46 could properly be considered procedural because it regulates “the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them.”
 
 Hanna,
 
 380 U.S. at 464, 85 S.Ct. 1136 (quoting
 
 Sibbach v. Wilson & Co.,
 
 312 U.S. 1, 14, 61 S.Ct. 422, 85 L.Ed. 479 (1941)). Analytically, § 28-01-46 is arguably a procedural statute. Whether the action was brought in federal or state court in South Dakota or North Dakota, in a medical negligence action of this nature, both parties will more than likely be required to obtain and disclose expert opinions supporting their position at some point. The timing and requirements of obtaining and perhaps disclosing such opinions would not normally be a substantive matter that would influence the outcome of the litigation. Even under the North Dakota provision, a violation only results in a dismissal without prejudice. Only if the statute of limitations had “run” would the failure be “fatal.” A plaintiff who sets forth adequate allegations of medical negligence and produces sufficient evidence to corroborate those allegations will obtain the same result, whether the action is brought in state court or federal court. In essence, § 28-01-46 does not diminish or enlarge what a plaintiff must prove in a medical malpractice case.
 

 [¶ 17] It is reasonable to conclude that even if § 28-01^16 is not procedural, it falls within the “uncertain area between substance and procedure” and is “rationally capable of classification as either.”
 
 Hanna,
 
 380 U.S. at 472, 85 S.Ct. 1136. While § 28-01-46 could be properly regarded as procedural under the analysis set forth in
 
 Eñe
 
 and its progeny, as plaintiff points out, this may not be the appropriate question to ask. Prior to making a determination as to substance or procedure, the proper question, given the content of § 28-01-46, is whether the expert provisions at issue in this case derogate the discretion vested in federal courts by the Federal Rules of Civil Procedure. The Rules Enabling Act, 28 U.S.C. § 2072, pro
 
 *MCCXLIX
 
 vides that the Supreme Court has the power to prescribe general rules of practice and procedure for cases in United States District Courts. The Supreme Court has described the difference between the
 
 Eñe
 
 and Enabling Act analysis:
 

 It is true that both the Enabling Act and the
 
 Eñe
 
 rule say, roughly, that federal courts are to apply state “substantive” law and federal “procedural” law, but from that it need not follow that the tests are identical. For they were designed to control very different sorts of decisions. When a situation is covered by one of the Federal Rules, the question facing the court is a far cry from the typical, relatively unguided
 
 Eñe
 
 Choice: the court has been instructed to apply the Federal Rule, and can refuse to do so only if the Advisory Committee, this Court, and Congress erred in their prima facie judgment that the Rule in question transgresses neither the terms of the Enabling Act nor constitutional restrictions.
 

 Hanna,
 
 380 U.S. at 471, 85 S.Ct. 1136. “It is well settled that if the Rule in point is consonant with the Rules Enabling Act, 28 U.S.C. § 2072, and the Constitution, the Federal Rule applies regardless of contrary state law.”
 
 Gasperini,
 
 518 U.S. at 428 n. 7, 116 S.Ct. 2211. If the state provisions provided in § 28-01-46 are in direct collision with the federal rules, it is clear that they are not applicable in federal court. The characterization of a state statute as substantive as opposed to procedural does not answer the question whether the statute conflicts with a Federal Rule of Civil Procedure. In other words, even if § 28-01-46 has a substantive nature, it is irrelevant if a federal rule occupies the statute’s field of operation, which, in this case, is the timing and substance required of expert disclosures.
 

 [¶ 18] Plaintiff argues that two Federal Rules of Civil Procedure concern the disclosure of expert opinions: Fed.R.Civ.P. 26(f) and Fed.R.Civ.P. 16(b). Discovery is a procedural matter governed in federal court by the Federal Rules of Civil Procedure and not by state discovery practice.
 
 See
 
 8 Wright and Miller, Federal Practice and Procedure § 2005 (Supp.2000). Fed. R.Civ.P. 26(f)(1) provides that parties are required to have a scheduling conference to develop a proposed discovery plan which indicates the parties’ views and proposals concerning “what changes should be made in the timing, form, or requirement for disclosures under Rule 26(a) ...” Rule 26(a)(2) provides that “a party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence.” While this rule does not require a party to engage an expert, it is geared toward disclosure. Rule 26(a)(2) goes on to provide that the disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case, “be accompanied by a written report prepared and signed by the witness.” Fed.R.Civ.P. 26(a)(2)(B). The requirements for the written report are set forth as follows:
 

 The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.
 

 Fed.R.Civ.P. 26(a)(2)(B). Most importantly, “these disclosures shall be made at the
 
 *MCCL
 
 times and in the sequence directed by the court.” Fed.R.Civ.P. 26(a)(2)(C).
 

 [¶ 19] In this case, the court issued an Order for Form 35 Report and Scheduling Information on July 10, 2003. (Doc. 9). That order requested that the parties submit, among other things, a statement of how many expert witnesses each party anticipated calling and the date by which each party would be required to disclose the identity and Rule 26(a)(2) reports of those expert witnesses. The parties conferred by telephone on August 4, 2003. Pursuant to Rule 26(f), the parties submitted a proposed discovery plan to the court. Paragraph 15 of that report reads as follows:
 

 Plaintiff shall have until June 1, 2004 and defendant shall have until July 15, 2004, to provide the names of expert witnesses and complete reports pursuant to Fed.R.Civ.P. 26(a)(2).
 

 Clearly, both plaintiff and defendant were acting pursuant to the Federal Rules of Civil Procedure at that point in the litigation. While the defendant provided notice of its intent to rely on § 28-01-46 in its answer (Doc. 4), it nonetheless signed the Rule 26(f) report, which made no mention of the heightened requirements of § 28-01^46. Relying on this report provided by counsel, the court entered an order on September 19, 2003, which ordered that “[r]eports from retained experts under Rule 26(a)(2) shall be due from plaintiffs by June 1, 2004, and from defendants by July 15, 2004.” (Doc. 19). Defendant now argues in its brief that the plaintiffs deadline for submitting an affidavit of expert review was August 20, 2003, despite the fact that it submitted a report to the court giving the plaintiff until June 1, 2004 “to provide the names of expert witnesses and complete reports pursuant to Fed.R.Civ.P. 26(a)(2).” This court does not intend to ignore or violate the scheduling order.
 

 [¶ 20] Defendant appears to be taking contradictory positions, seeking the protection of § 28-01-46 while submitting a different set of dates to the court pursuant to Fed.R.Civ.P. 26. Indeed, in its brief, defendant argues that “[plaintiff] has undisputedly failed to seek to extend the deadline prior to the time it elapsed, or prior to the instant motion.” (defendant’s brief, page 13). Why would the plaintiff seek to extend the deadline when the defendant and plaintiff agreed that June 1, 2004, was the date by which plaintiff must come forward with the names and reports of expert witnesses? Under defendant’s theory, plaintiff was required to submit an expert affidavit setting forth substantially the same information as is required by Fed.R.Civ.P. 26(a)(2) within three months of the commencement of the action. At the same time, in a report submitted to the court, defendant takes the position that plaintiff has until June 1, 2004, to submit the names and reports of experts. The problem is that these rules cannot operate simultaneously without one being subordinated to the other, and where there is a collision between a state statute and the Federal Rules of Civil Procedure, the state rule must give way.
 

 [¶ 21] Defendant cites a lengthy list of district court decisions that have applied various state statutes that it considers analogous to § 28-01-46 in the face of “identical
 
 Eñe
 
 challenges.” However, many of the cases cited concerned statutory requirements that plaintiffs go through arbitration or submit them claims to medical review boards.
 
 See e.g. Bledsoe v. Crowley,
 
 849 F.2d 639 (D.C.Cir.1988),
 
 Seoane v. Ortho Pharm., Inc.,
 
 660 F.2d 146 (5th Cir.1981),
 
 Feinstein v. Massachusetts Gen. Hosp.,
 
 643 F.2d 880 (1st Cir.1981),
 
 DiAntonio v. Northampton-Accomack Mem’l Hosp.,
 
 628 F.2d 287 (4th Cir.1980),
 
 Davison v. Sinai Hosp. of Baltimore, Inc.,
 
 617 F.2d 361 (4th Cir.1980),
 
 *MCCLI
 

 Edelson v. Soricelli,
 
 610 F.2d 181 (3d Cir.1979), and Woods
 
 v. Holy Cross Hosp.,
 
 591 F.2d 1164 (5th Cir.1979). A review of the Federal Rules of Civil Procedure reveals no rule concerning mandatory arbitration or review by medical boards and there is no such issue involved in this case.
 

 [¶ 22] District Courts considering the expert affidavit statutes involved in the instant case have reached varying results. Some have concluded that expert affidavit requirements do not collide with the federal rules.
 
 See e.g. Chamberlain v. Giampapa,
 
 210 F.3d 154 (3d Cir.2000) (applying New Jersey affidavit of merit statute against alleged conflict with Rules 8 and 9);
 
 Ellingson v. Walgreen Co.,
 
 78 F.Supp.2d 965 (D.Minn.1999) (Minnesota statute requiring expert affidavit applied despite challenge that Rule 26(a) controlled expert disclosures);
 
 Hill v. Morrison,
 
 870 F.Supp. 978 (W.D.Mo.1994) (Missouri statute requiring medical malpractice plaintiff to submit affidavit did not conflict with Fed.R.Civ.P. 11);
 
 Connolly v. Foudree,
 
 141 F.R.D. 124 (S.D.Iowa 1992) (Iowa’s statutory requirement of early disclosure of expert witnesses in professional malpractice cases did not conflict with Fed. R.Civ.P. 26(b) (4) (A) (i)). Others have reached the opposite conclusion, determining that a direct collision mandates the application of the federal rules. Many of these cases have dealt with a requirement that plaintiffs attach expert affidavits to their pleadings or face dismissal of the suit.
 
 See e.g. Baird v. Celis,
 
 41 F.Supp.2d 1358 (N.D.Ga.1999) (Georgia expert affidavit which requires specific allegations of negligence is in direct conflict with the notice pleading standard of Federal Rule 8(a));
 
 Boone v. Knight,
 
 131 F.R.D. 609, 611 (S.D.Ga.1990) (Georgia statute requiring plaintiffs alleging professional malpractice to file with the complaint an affidavit of a competent expert applied exclusively to actions brought in state court and was inapplicable in federal cases);
 
 Braddock v. Orlando Regional Health Care Sys., Inc.,
 
 881 F.Supp. 580 (M.D.Fla.1995) (heightened pleading requirement requiring an affidavit from a medical expert as part of a plaintiffs complaint directly conflicts with Fed.R.Civ.P. 8(a), which requires only a short and plain statement showing that the pleader is entitled to relief).
 

 [¶ 23] One case which is particularly instructive is
 
 Poindexter v. Bonsukan,
 
 145 F.Supp.2d 800 (E.D.Tex.2001).
 
 Poindex-ter
 
 was a medical malpractice action that arose out of the death of an eighteen-day old infant. The plaintiffs alleged that the doctors who treated the infant were negligent in failing to perform various medical procedures on the child. Under the Texas Medical Liability and Insurance Improvement Act, a plaintiff is required to file one or more expert reports for each defendant physician no later than 180 days after the date on which the health care liability action is filed.
 
 See
 
 Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01(d)(1). If a plaintiff fails to comply with the disclosure requirements and the defendant files a motion seeking sanctions, the trial court has no discretion and must enter an order dismissing the action.
 
 See
 
 Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01(e)(3). The defendants raised challenges regarding the content and timeliness of the reports submitted. The court reasoned that “the mandatory timing, report content, and sanction provisions of § 13.01 abrogate the discretion provided by Rules 26(a)(2) and 37.”
 
 Id.
 
 at 808.
 

 [¶ 24] Likewise, there is no question that the requirements of § 28-01-46 and its mandatory application could derogate the federal trial court’s discretion in this case. The court in
 
 Poindexter
 
 cited four reasons that the state statute had to yield to the federal rules in that case.
 
 Id.
 
 at 808-09. Those reasons are equally compelling here. The federal and state provisions involved
 
 *MCCLII
 
 in this case both seek to penalize parties that file baseless suits. Fed.R.Civ.P. 11 allows sanctions for frivolous suits and Fed.R.Civ.P. 37 gwerns the sanctions to be imposed for discovery disputes. The federal rules adopt a case-by-case approach to discovery of experts and identifying and deterring frivolous actions. On the other hand, § 28-01-46 automatically characterizes every medical malpractice suit as frivolous where an expert affidavit is not obtained within three months and mandates dismissal of such suits.
 

 [If 25] Second, the requirement that a plaintiff obtain, and, by implication, produce and file expert affidavits within three months, as set forth in § 28-01-46, collides with the discretionary power vested in the federal court. Fed.R.Civ.P. 26(a)(2)(C) provides that expert disclosures “shall be made at the times and in the sequence directed by the court.” It does not say “as directed by a state legislature.” In this case, pursuant to the Rule 35 report provided by the parties, the court ordered that the plaintiff submit the names of experts and reports by June 1, 2004, and directed the defendant to do so by July 15, 2004.
 

 [¶ 26] Third, the content requirements are different. Fed.R.Civ.P. 26(a)(2)(B) requires that the report contain
 

 a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.
 

 Conversely, § 28-01^16 provides that “[t]he expert’s affidavit must identify the name and business address of the expert, indicate the expert’s field of expertise, and contain a brief summary of the basis for the expert’s opinion.” It is conceivable that plaintiff could meet the requirements of § 28-01-46 and fail to meet the requirements of Fed.R.Civ.P. 26(a)(2)(B) and vice versa. Defendant seems to contend that the plaintiff should satisfy both. Although plaintiff is not even required to come forward with the names of her experts before June 1, 2004, under the federal rules and the court’s order, she is claimed to be required to provide expert affidavits by August 20, 2003, under the North Dakota statute. These two provisions cannot operate simultaneously.
 

 [¶ 27] Finally, the sanction or penalty for noncompliance with the two rules directly collides. Fed.R.Civ.P. 37(c)(1) sets forth that a party who, without substantial justification, fails to disclose information required by Rule 26(a) shall not be permitted to use such information as evidence at trial. It goes on to provide that, on motion and after affording an opportunity to be heard, the court may impose other appropriate sanctions, including dismissing the case against the disobedient party.
 
 See
 
 Fed.R.Civ.P. 37(c)(1) and Fed.R.Civ.P. 37(b)(2)(C). This approach affords the federal court much more discretion than the mandatory dismissal required by § 28-01-46.
 

 [¶ 28] The conclusion reached by the court in
 
 Poindexter
 
 that the state statute must yield to the controlling federal rules was mindful of Supreme Court precedent which developed after the
 
 Erie
 
 decision.
 

 What matters is that the federal rule is sufficiently broad that it covers the point in dispute. The timing provisions are different; the expert report requirements are different; and the sanctions
 
 *MCCLIII
 
 for noncompliance are different. In each case, the discretion vested in the federal trial judge is abrogated by the state rule. Under
 
 Hanna
 
 and
 
 Burlington,
 
 this is precisely the kind of conflict that forces a choice between applying the federal rule of procedure or the state rule. And in that contest, the federal rules must prevail in federal court.
 

 Id.
 
 at 810.
 

 [¶ 29] Likewise, regardless of what the North Dakota statute requires, it is the view of this court that this action should be governed by the Federal Rules of Civil Procedure. Although the court’s decision is based on its determination that § 28-01-46 collides with the Federal Rules of Civil Procedure, it is worth noting that mandatory dismissal is an exceptionally harsh measure in a case of this nature. Plaintiff brought this suit in South Dakota, obviously assuming that South Dakota law would apply. The case was then removed to federal court. Whether plaintiff was correct or not as to the applicability of South Dakota substantive law, at no point prior to the expiration of the three month period prescribed by § 28-01-46 did the court announce that the action was governed by North Dakota law. Consequently, it would be a draconian measure to dismiss plaintiffs action for allegedly failing to comply with a law that neither party even knew was applicable. This is especially true here, where the issue of which law applies has been hotly contested by both parties from the onset.
 

 [¶ 30] “ ‘[B]efore entangling itself in messy issues of conflict of laws a court ought to satisfy itself that there actually is a difference between the relevant laws of the different states.’ ”
 
 Phillips v. Marist Society of Washington Province,
 
 80 F.3d 274, 276 (8th Cir.1996) (quoting
 
 Barron v. Ford Motor Co., of Canada,
 
 965 F.2d 195, 197 (7th Cir.),
 
 cert. denied,
 
 506 U.S. 1001, 113 S.Ct. 605, 121 L.Ed.2d 541 (1992)). The only conflict discussed by defendant for the purpose of this motion was that occasioned by the application of § 28-01-46. In an earlier filing, the defendant discussed the potential for conflict resulting from a North Dakota statute concerning comparative fault and several liability. N.D. Cent.Code § 32-03.2-02. There is one named defendant and comparative fault is not likely an issue considering the facts of this case. Having found that § 28-01-46 is inapplicable in this action and having reviewed the relevant laws of South Dakota and North Dakota, the court is unaware of any further conflict which would result in a substantial difference between North Dakota and South Dakota medical negligence law. Indeed, the laws of the states are substantially similar. We only have one defendant and the time has passed to add a party, again based on the scheduling order. As such, the law of South Dakota can properly be applied to this action.
 
 See Phillips,
 
 80 F.3d at 276 (citing
 
 Forsyth v. Cessna Aircraft Co.,
 
 520 F.2d 608, 613 (9th Cir.1975) (“In the absence of a true conflict,
 
 lex fori
 
 controls.”))
 

 ORDER
 

 [¶ 31] Now, therefore, based on the foregoing,
 

 [¶ 32] IT IS ORDERED that the defendant’s motion for judgment on the pleadings and motion for summary judgment, Doc. 21, is denied.