# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-3332

_____

DALE WEASEL, individually and as    *
Guardian ad Litem for MARY ROSE    *
KILLS CROW WEASEL, a totally    *
disabled person and their minor children    *
IN'YAN DEMETRICE WEASEL, IRA    *
WEASEL, and CHEYENNE WEASEL,    *
and their emancipated children JENNIFER    *
WEASEL, WAYLON WEASEL and    *
CLYDE WEASEL,    *    Appeal from the United States
   *    District Court for the District
   Appellants,    *    of North Dakota.
   *
   v.    *    [PUBLISHED]
   *
ST. ALEXIUS MEDICAL CENTER, a    *
non-profit, North Dakota corporation,    *
and attending physician JERRY    *
OBRITSCH, M.D., FACOG,    *
   *
   Appellees.    *

_____

Submitted: June 13, 2000
Filed: October 13, 2000

_____

Before HANSEN and HEANEY, Circuit Judges, and MILLS,[1] District Judge.

_____

[1]The Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

MILLS, District Judge:

A medical malpractice case.

## I.  Background

On August 27, 1996, Mary Rose Kills Crow Weasel, the wife of Dale Weasel, gave birth to a child at St. Alexius Medical Center in Bismark, North Dakota.  Dr. Jerry Obritsch delivered the child by caesarian section.  Mary Weasel, a member of the Standing Rock Sioux Indian Tribe, was diabetic and overweight at the time of delivery. She was approximately five feet tall, and had gained over 50 pounds during her pregnancy.  Notwithstanding Mary Weasel's physical condition, the delivery was uncomplicated, and she was scheduled for discharge just a few days following the birth of her child.

On August 29, 1996, however, Mary Weasel went into cardiac arrest, suffered permanent brain damage and remains in a coma to this day.

On August 19, 1998, Dale Weasel, on behalf of his wife and children (collectively the "Weasels"), filed this medical malpractice action against St. Alexius ("Hospital") and Dr. Obritsch in federal court asserting diversity jurisdiction.

Approximately six months later, in February of 1999, the Hospital and Dr. Obritsch moved to dismiss the action based on the Weasels' failure to retain and file an expert's affidavit within three months of the filing of the Complaint as required under North Dakota law.  See N.D.C.C. § 28-01-46.  On February 23, 1999, the Weasels filed a response informing the court that the medical records were submitted to one physician and two registered nurses and that their findings were about to be submitted.  Moreover, the Weasels' attorney suggested to the district court that they needed financial assistance from the Standing Rock Sioux Tribe to finance the litigation, but that the financial assistance "was received once, . . . retracted once and

2

now might be available again." As such, the Weasels requested an additional 90 days to tender the expert's opinion, and if they failed to do so, their attorney stated that he would advise the Weasels to voluntarily dismiss the case.

On March 2, 1999, the Weasels filed a supplement to their response which contained an affidavit executed by Teresa Price, R.N. She opined that Appellees were negligent. The affidavit also pointed out that she was consulting with Dr. Morrow with regard to this case. At that time, the Weasels also told the court that a second opinion was forthcoming from Dr. Morrow.

The district court, on March 30, 1999, dismissed the action without prejudice for failure to comply with the affidavit requirement in N.D.C.C. § 28-01-46. With regard to the nurse's affidavit, the district court rejected that opinion stating, "[t]he statute contains the words 'admissible expert opinion.' I am not sure that the opinion of a registered nurse would be admissible as to the standard of care to be followed by a surgeon or an ob/gyn specialist."

On April 9, 1999, the Weasels filed a motion to reconsider, stating that medical experts were ready to submit opinions when they were assured of payment. With this motion, the Weasels also filed an affidavit of Standing Rock Tribal Chairman Charles Murphy. In his affidavit, Chairman Murphy stated that the tribe will "financially assist the Weasel family in obtaining both the medical expert opinions and paying for continued legal representation . . . ." Moreover, the Weasels argued that the court should grant some leeway because their ability to raise funds was hampered by internal tribal politics.[2]

The district court denied this motion finding that there were no exceptions to the

---

[2]Apparently, because the Weasels belong to an American Indian Tribe, they cannot encumber their trust land for funds without approval by the Tribal Council.

statute based on the Weasels being members of an American Indian tribe or because of their financial difficulties.

The Weasels filed a second motion to reconsider, but on July 30, 1999, the district court also denied that motion. This appeal followed.

## II. Issue

The sole issue in this case is whether the district court erred in dismissing Appellants' case without prejudice when Appellants failed to provide an admissible expert's affidavit within the three month period mandated by state statute.

## III. Discussion.

Under North Dakota law, a plaintiff who asserts a medical malpractice claim must file an expert affidavit with the court within three months of filing the suit, unless good cause is shown. The statute in question states:

> 28-01-46 Expert opinion required to maintain an action based upon alleged medical negligence except in obvious cases.
> *Any action for injury or death against a physician, nurse, or hospital licensed by this state based upon professional negligence must be dismissed without prejudice on motion unless the claimant has obtained an admissible expert opinion to support the allegation of professional negligence within three months of the commencement of the action or at such later date as set by the court for good cause shown by the plaintiff.* The expert's affidavit must identify the name and business address of the expert, indicate the expert's field of expertise, and contain a brief summary of the basis for the expert's opinion. This section does not apply to alleged lack of informed consent, unintentional failure to remove a foreign substance from within the body of a patient, or performance of a medical procedure upon the wrong patient, organ, limb, or other part of the patient's body, or other obvious occurrence.

N.D.C.C. § 28-01-46 (1997) (emphasis added).

4

This statute was designed to minimize frivolous claims against physicians, nurses, and hospitals by avoiding the necessity of a trial in an action based upon professional negligence unless the plaintiff obtains an expert opinion to substantiate the allegations of negligence. See Heimer v. Privratsky, 434 N.W.2d 357, 359 (N.D. 1989); Fortier v. Traynor, 330 N.W.2d 513, 516 (N.D. 1983). This section, however, does not require a plaintiff to complete discovery or to establish a *prima facie* case in an accelerated time frame. See Ellefson v. Earnshaw, 499 N.W.2d 112, 114 (N.D. 1993). As the plain wording of the statute dictates, a plaintiff must merely make a proffer of admissible expert opinion within three months of filing the suit or at a later time as granted by the court. See Larson v. Hetland, 593 N.W.2d 785, 787 (N.D. 1999).

In this case, the three month period ran on November 20, 1998.[3] There is no dispute that Appellants did not file an affidavit within the three month period as provided by the statute. More importantly, the record reflects that Appellants did not seek to extend the three month deadline prior to the limitations period running. Nor did they seek an extension of time before the Appellees filed the motion to dismiss. Regardless, Appellants raise basically two points of error allegedly committed by the district court in applying the above referenced statute: first, Appellants argue that they showed "good cause" for extending the time to procure the expert's affidavit; and second, Appellants argue that the district court improperly rejected Appellant's proffer of Nurse Price's affidavit.

For the following reasons, we affirm.

---

[3]Appellants initiated this action on August 19, 1998. November 20, 1998 would be the expiration date of the three month period.

## A.

Initially, the Court notes that there is a dispute as to the applicable standard of review that we should apply to the district court's decision to dismiss Appellants' case without prejudice. Since our jurisdiction in this case is based on diversity, we look to state law for the proper standard of review. See Erie R.R. v. Tompkins, 304 U.S. 64, 78, 58 S. Ct. 817, 822, 82 L. Ed. 1188 (1938); see, e.g., Burke v. Deere & Co., 6 F.3d 497, 511 (8th Cir. 1993) (applying state law standard of review in a diversity case in the context of reviewing for sufficiency of the evidence). The Supreme Court of North Dakota has not definitively decided what standard of review applies to a trial court's decision applying the statute involved in this case. See Larsen v. Zarrett, 498 N.W.2d 191, 195 n.2 (N.D. 1993). It has, however, applied the "abuse of discretion" standard in an unpublished opinion. See Johnson v. Kennedy, No. 89-0341, 1990 WL 36947, at *1 (N.D. Mar. 1, 1990). But, the court has also stated that the "standard of review under N.D.C.C. § 28-01-26 may vary depending on the procedural posture of the case," Larson v. Hetland, 593 N.W.2d 785, 787 n.1 (N.D. 1999), and that "greater leniency for the plaintiff who is subject to a motion for dismissal under § 28-01-46 may be required than is typically given under either [evidentiary-abuse-of-discretion or summary judgment's genuine-issue-of-material-fact] standard." Zarrett, 498 N.W.2d at 195 n.2.

Given the procedural posture of the case, we conclude that we should give greater leniency to Appellants and will apply a standard of review that is somewhat lower than the traditional standard of review for abuse of discretion when considering this case. With that focus, we now turn to the merits of Appellants' arguments for reversal.

B.

Appellants argue that the district court should have granted additional time for them to make a proffer because they demonstrated "good cause." Specifically, Appellants point out that "good cause" for additional time was shown when they presented Teresa Price's affidavit, which contained a statement that she would be collaborating with Dr. Robert Morrow. Appellants argue that the proffer was evidence of a "good faith" effort to comply with the statute. Further, Appellants argue that "good cause" was shown when they explained to the district court the unique difficulties Appellants faced in obtaining the financial support needed to obtain the expert's affidavit.

In contrast, Appellees point out that there is no dispute that Appellants failed to meet the timing and proffer requirements of § 28-01-46. Further, Appellants' efforts to show "good cause" came only after twice the length of the three month period had expired. Since they failed to meet the statutory requirements, Appellees argue that the district court was "manifestly authorized" to dismiss the action.

Although we agree generally with Appellees' characterization of the district court's authority to dismiss the action without prejudice, we find that the statutory language in § 28-01-46 grants less discretion to the trial court than what the parties urge under the facts of this case. Contrary to the parties' position that the district court *may* dismiss the suit if a plaintiff fails to file an affidavit within three months, our reading of the statute leads us to the conclusion that the district court *must* dismiss the suit upon motion if no affidavit is filed within three months, and the time to file such an affidavit has not been extended. See N.D.C.C. § 28-01-48 (1998) ("[a]ny action . . . against a physician, nurse, or hospital . . . based upon professional negligence *must be dismissed without prejudice* on motion unless the claimant has obtained an admissible expert opinion . . . within three months of the commencement of the action or at such later date as set by the court for good cause shown by the plaintiff.")(emphasis added). As

7

noted before, there is no dispute that Appellants failed to obtain an expert opinion within three months of filing suit, or that Appellants failed to move to extend that time for good cause prior to November 20, 1998. Thus, when the three month deadline–the only deadline set in this case–ran, the district court had no choice but to dismiss the case upon Appellees' motion.

Appellants cite to Larson v. Hetland, 593 N.W.2d 785 (N.D. 1999), as precedent that additional time should have been granted to Appellants in securing the affidavit. In Larson, the *pro se* plaintiff initiated a medical malpractice suit in July 1995. Due to his expert losing his medical license, two changes of counsel, and several scheduling conflicts, the court gave Larson a significant amount of time to make the proffer, and the case lingered for over three years. See Larson, 593 N.W.2d at 785-86. Ultimately, the district court dismissed the suit based on plaintiff's discovery violations and failure to obtain an expert's opinion as required under § 28-01-46. See Id. at 786.

We find the Larson case to be inapposite. While it is true that the trial court afforded a significantly longer period of time to Larson to procure an expert than Appellants were afforded in this case, it is critical to note that the version of the statute that the Larson court applied gave it discretion to retain the suit at the expiration of the three month period. The court in Larson applied the pre-1997 version of § 28-01-46 which stated in part, "[a]ny action . . . against a physician . . . based upon professional negligence is ***dismissible on motion*** unless the claimant has obtained an admissible expert opinion . . . within three months of the commencement of the action or at such later date as set by the court.") (Emphasis added). Thus, the trial court in Larson did not have to dismiss the suit when the defendant filed his motion to dismiss.

As the North Dakota Supreme Court has pointed out in a footnote, however, the North Dakota legislature amended that statute in 1997, adding, *inter alia*, the mandatory dismissal without prejudice language. See Larson, 593 N.W.2d at 787 n.1. (citing Act effective August 1, 1997, ch. 272, 1997 N.D. Sess. Laws.) The amended

statutory language that is applicable in this case is clear: it is no longer permissible for the trial court to deny the Appellees' motion to dismiss if the affidavit requirement is not met within a court set deadline or within three months from the commencement of suit. Unfortunately for Appellants, their explanations as to their noncompliance, and their efforts to comply with the statutory mandates came too late. The record reflects that Appellants filed Nurse Price's affidavit more than seven months after the commencement of suit, and more importantly, they sought to extend the proffer deadline only after Appellees moved to dismiss the suit.

Our reading of the statute convinces us that two dates are critical. The first is the expiration of the statutory three-month period after the filing of the lawsuit; the second is the date of the filing of the defendants' motion to dismiss. Under the statute, the plaintiffs' "good cause" motion to extend the deadline for obtaining the expert's opinion can be filed after the expiration of the statutory three-month period and can be granted by the trial court if no motion to dismiss for failure to obtain such an opinion has been filed before the extension is sought. But, if three months have passed since the commencement of the action without the plaintiffs' obtaining the expert opinion, and no later date for compliance has been set by the court on the plaintiffs' motion filed before the defendants file their motion to dismiss, then the statute plainly says that the court must dismiss the case without prejudice by granting the defendants' dismissal motion.

We do agree with the dissent that this case presents a set of facts that cry for compassion. But as to the legal issues presented in the case, we are bound by the intent of the legislature as expressed in the plain wording of the statute. Adopting the dissent's interpretation of the statute, however, would force this Court to substitute its judgment for that of the North Dakota legislature. We decline to embark on such an unconstitutional task.

Whatever the merits of their reasons for noncompliance may have been, the court

9

could not have considered it. It <u>had</u> <u>to</u> <u>dismiss</u> the case on motion of the Appellees. If the district court could consider the request for the extension despite the request being untimely, it would render the mandatory dismissal language and the three month deadline in § 28-01-46 useless. We decline to read the statute in that fashion.[4] Further, since we hold that the district court had no choice but to dismiss the suit without prejudice at the end of the three month period, we find it unnecessary to discuss whether the district court properly rejected Nurse Price's affidavit.

Lastly, Appellants also argue that the district court's dismissal denied Appellants equal access to justice and to equal protection of the laws. Moreover, Appellants argue that the decision was "discrimination based on race and disability." Appellants' Initial Brief, p. 20. Although the Court is mindful of the social and economic struggles of Native American Indians, we find nothing in the record to suggest that the district court's decision was based on discriminatory motives, nor do we find that Appellants were denied equal access to justice. Accordingly, we reject Appellants' argument.

C.

Prior to oral arguments in this case, Appellants filed with this Court a motion to submit Dr. Morrow's affidavit. Appellees filed a response objecting to the motion. Considering our holding in this case, we deny Appellants' motion as moot.

For the reasons given above, the judgment of the district court is AFFIRMED.

HEANEY, Circuit Judge, dissenting.

---

[4]A dismissal without prejudice normally would not have a preclusive effect on a plaintiff's case. In this case, the dismissal has a heavier consequence. Since Appellants filed this suit ten days prior to the running of the two-year statute of limitations, the dismissal may prevent Appellants from filing the suit again. We cannot, however, consider this factor while deciding this case.

Because I believe that N.D.C.C. § 28-01-46 allows the district court the discretion to extend the time for provision of an expert opinion in a medical malpractice action, and because I believe that good cause for an extension of time was shown in the circumstances of this case, I must respectfully dissent.

A more complete statement of the factual background is essential to understanding this case. Living without a telephone or reliable transportation, and subsisting on government surplus food, Mary Rose Kills Crow Weasel, a mother of six, was a diabetic who gained over fifty pounds during the course of her last pregnancy. After being admitted to the hospital on August 26, 1996 for a Caesarean section, Mary did not receive any insulin for a period of at least three days. Shortly after the Caesarean section, in which she delivered a baby weighing thirteen pounds and eight ounces, Mary began experiencing shortness of breath. She went into cardiac arrest, and was without a heartbeat for twenty minutes, which left her permanently brain-damaged and in the comatose state in which she remains today. The plaintiffs allege that certain actions by the defendants exacerbated Mary's distress, including: waiting too long before performing the Caesarean section; failing to provide Mary with insulin for her diabetic condition; having her walk while she could not breathe; and subjecting her to awake intubation without any medication to calm her.

Dale Weasel, Mary's husband, is unemployed, disabled, and is facing the challenge of raising their children and foster children alone. The one significant asset of the Weasels is land that is held in Indian trust. Dale lives in precarious economic circumstances that have made the financing of the medical malpractice lawsuit difficult; he has sought assistance in pursuing this litigation from the Standing Rock Sioux Indian tribe. According to the affidavit submitted by the Weasels' attorney, it was these financial circumstances that led to the request for additional time for the expert witness opinion.

The majority adopts a construction of the statute that neither party has advanced. According to the majority, under § 28-01-46, the district court retains no discretion to extend the time for the provision of an expert opinion if the plaintiff has not made arrangements for such an extension within three months after filing the action. See ante at 7. Neither the defendants nor the plaintiffs have urged this interpretation of the statute in front of the district court, in the briefs, or at oral argument. Both parties seem to agree that the only relevant issue in this appeal is whether the district court abused its discretion in not allowing an extension of time.

Further, the majority's interpretation fails to honor the plain meaning of the statute. The plain language of N.D.C.C. § 28-01-46 allows for an extension of time if a plaintiff shows "good cause." See, e.g. Nesdahl Surveying & Engineering, P.C. v. Ackerland Corp., 507 N.W.2d 686, 688 (N.D. 1993) ("When looking for the legislature's intent, the first place we are obligated to search is the language of the statute."); Kim-Go v. J.P. Furlong Enters., Inc., 460 N.W.2d 694, 696 (N.D. 1990). The statute contains no requirement that a motion for an extension be filed within the three-month period. Although dismissal upon proper motion by the defendant is mandatory, the statute is not self-executing, and if the defendant omits or chooses not to file such a motion, a plaintiff's action may not be dismissed. Given that the requirement to produce an expert opinion only becomes relevant upon a defendant's motion, it would seem fair that a plaintiff be allowed to seek an extension within a reasonable time after receiving notice of the motion to dismiss under N.D.C.C. § 28-01-46. Cf. Ellefson v. Earnshaw, 499 N.W.2d 112, 114 (N.D. 1993) (finding that statute does not require plaintiff to complete discovery or establish prima facie case).

Finally, the majority's reading of the statute is not in accord with the Supreme Court of North Dakota's interpretation of the last version of the statute. In Larson v. Hetland, 593 N.W.2d 785, 786 (1999), the trial court had granted the plaintiff an extension of time one year after both parties had failed to take any action on the case. The trial court dismissed the plaintiff's case only after granting a series of time

12

extensions and after a period of three years had elapsed, and the Supreme Court of North Dakota affirmed. See id. at 787- 88. Although the Supreme Court of North Dakota noted in Larson that the statute had recently been amended, the court did not state that the result would be any different under the new version of the statute. See id. at 787 n.1.

Therefore, the question that has been briefed by the parties, and that I believe is at the center of this appeal, is whether the district court erred in concluding that Dale Weasel's economic circumstances did not constitute good cause under § 28-01-46. In making this determination, the district court assumed that the plaintiffs' attorney had taken the case on a contingent-fee basis and was advancing the expenses of litigation, as is typical in most medical malpractice cases. Although such contingent-fee arrangements are common, the brief that was submitted shows that this was not the arrangement between Weasel and his attorney, and that Weasel was waiting to obtain financing from Standing Rock Sioux Indian tribe. The district court's unwillingness to recognize Weasel's obvious financial difficulties as a form of "good cause" appears to flow directly from the assumption that the plaintiff's attorney was "fronting" the costs of litigation, an assumption unsupported on the record. As the decision to grant an extension of time should be predicated on the interests of justice, rather than the financial structure of the business of law, I would reverse.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

13