Nicole SMITH, et al., Plaintiffs,

v.

**PLANNED PARENTHOOD OF THE ST. LOUIS REGION, et al., Defendants.**

**No. 4:03–CV–1727 CAS.**

United States District Court,
E.D. Missouri,
Eastern Division.

Nov. 23, 2004.

Jason R. Craddock, Springfield, IL, for Plaintiffs.

Kenneth C. Brostron, Sarah K. Hackworth, Tyler S. McClay, Lashly and Baer, P.C., St. Louis, MO, for Defendants.

### MEMORANDUM AND ORDER

SHAW, District Judge.

This matter is before the Court on defendant Planned Parenthood of the St. Louis

Region's motion to dismiss plaintiffs' Amended Complaint. In the alternative, defendant moves to sever the two plaintiffs' causes of action. Plaintiffs oppose the motion to dismiss and the alternative motion to sever. For the following reasons, the Court will deny the motion to dismiss and grant plaintiff Smith forty-five days in which to file an affidavit as required by Mo.Rev.Stat. § 538.225 (2000). The Court will grant the alternative motion to sever and order plaintiff McMorris to file an individual complaint within thirty days.

## I. Background.

This action was originally filed in this Court in October 2001, captioned *Smith v. Planned Parenthood of the St. Louis Region, et al.*, Case No. 4:01-CV-1574 CAS. On motion of the plaintiff, the case was voluntarily dismissed without prejudice on November 26, 2002. Plaintiff refiled the action one year later on November 26, 2003. The complaint alleged that plaintiff Smith went to Planned Parenthood of St. Louis in October 1999 for counseling concerning her pregnancy, and despite her ambivalence a physician placed laminaria inside plaintiff's cervix in order to cause dilation so that an abortion could be performed the next day.[1] Later the same day, plaintiff decided she did not wish to continue the procedure and had the laminaria removed at a hospital after defendant refused to do so. Plaintiff alleged she developed a high fever as a result of infection from insertion of the laminaria, and a sonogram on October 5, 1999, revealed that her unborn child had died *in utero*. Plaintiff underwent a hysterectomy and uterine curettage evacuation on October 8, 1999. Plaintiff asserted claims for medical malpractice, fraud and deceptive trade practices and wrongful death under Missouri law, and jurisdiction was based on diversity of citizenship.

On March 1, 2004, plaintiff moved for additional time to file the affidavit required by Mo.Rev.Stat. § 538.225. On March 24, 2004,

the Court denied without prejudice plaintiff's motion for additional time to file the affidavit because (1) the motion was not signed by counsel, and (2) the motion did not comply with Local Rule 4.01(A) as it was not accompanied by a memorandum in support with citation to supporting authority, and did not even contain a citation to the statute which requires the health care affidavit. *See* Mem. and Order of Mar. 24, 2004, at 8–9 [Doc. 10]. Plaintiff did not renew her motion for additional time to file the required affidavit.

In May 2004, plaintiff filed a motion for leave to file an amended complaint, which *inter alia* added another plaintiff to the action, deleted several defendants, and added several counts. Plaintiff asserted in her motion for leave that the claims of the proposed additional plaintiff, Tiffany McMorris, contained common questions of law and fact with those of plaintiff Smith. Because no responsive pleading had been filed, plaintiff did not need leave of Court to amend her complaint. *See* Rule 15(a), Fed.R.Civ.P. As a housekeeping matter, the Court granted plaintiff leave to file the amended complaint.[2]

The amended complaint asserts federal as well as state law claims. It reiterates plaintiff Smith's state law claims for medical malpractice, fraud and deceptive trade practices, and wrongful death (Counts I–III), and adds Smith's claims for civil rights violations under 42 U.S.C. §§ 1981 and 1985 (Counts IV and V). Plaintiff McMorris asserts claims for false imprisonment (Count VI), fraud and deceptive trade practices (Count VII), and civil rights violations under 42 U.S.C. §§ 1981 and 1985 (Counts VIII and IX).

## II. Motion to Dismiss.

Defendant moves to dismiss the amended complaint on the basis that plaintiff Smith has failed to file an affidavit stating that she has obtained a written opinion of a legally qualified healthcare provider certifying the merits of her medical malpractice cause of action, as required by § 538.225, Mo.Rev.

---

1. Laminaria is a "[s]terile rod made of kelp (genus *Laminaria*) which is hydrophilic, and, when placed in the cervical canal, absorbs moisture, swells, and gradually dilates the cervix." *Stedman's Medical Dictionary* 964 (27th ed.2000).

2. The Court could also have denied plaintiff's motion for leave to amend as moot, because leave was unnecessary.

Stat.[3] Defendant cites *Hill v. Morrison*, 870 F.Supp. 978 (W.D.Mo.1994), for the proposition that a plaintiff filing a diversity medical malpractice claim in federal court must file the health care affidavit pursuant to § 538.225.

The Missouri health care affidavit statute provides:

1. In any action against a health care provider for damages for personal injury or death on account of the rendering of or failure to render health care services, the plaintiff or his attorney shall file an affidavit with the court stating that he has obtained the written opinion of a legally qualified health care provider which states that the defendant health care provider failed to use such care as a reasonably prudent and careful health care provider would have under similar circumstances and that such failure to use such reasonable care directly caused or directly contributed to cause the damages claimed in the petition.

2. The affidavit shall state the qualifications of such health care providers to offer such opinion.

3. A separate affidavit shall be filed for each defendant named in the petition.

4. Such affidavit shall be filed no later than ninety days after the filing of the petition unless the court, for good cause shown, orders that such time be extended.

5. If the plaintiff or his attorney fails to file such affidavit the court may, upon motion of any party, dismiss the action against such moving party without prejudice.

Section 538.225, Mo.Rev.Stat.

Plaintiff responds that the Missouri health care affidavit statute conflicts with the Federal Rules of Civil Procedure, specifically Rule 26(a)(2), because the statute conflicts with the deadline for expert witnesses set by this Court in the Case Management Order. Plaintiff relies on *Serocki v. MeritCare Health System*, 312 F.Supp.2d 1201, 1205–11 (D.S.D.2004). Plaintiff further responds that if the statute applies, she should be given additional time to file the affidavit rather than face dismissal.

***Discussion.***

■■■ Where jurisdiction of a case is based on diversity of citizenship, a federal court must apply state substantive law and federal procedural law. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). This principle applies equally in the context of pendent jurisdiction over supplemental state law claims, such as in the present case. *See Witzman v. Gross*, 148 F.3d 988, 990 (8th Cir.1998) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). The substantive/procedural distinction of the *Erie* doctrine is intended to ensure that the outcome of the litigation in federal court will be substantially the same

3. The health care affidavit statute applies to actions "against a health care provider for personal injury or death on account of the rendering of or failure to render health care services[.]" Mo. Rev.Stat. § 538.225.1. Defendant has moved to dismiss the entire complaint for failure to comply with the statute. The Court need not determine at this time whether the statute applies only to plaintiff Smith's medical malpractice in Count I, or also to her fraud and wrongful death claims in Counts II and III. The elements of a plaintiff's cause of action do not determine whether the statutory affidavit is required. *St. John's Reg. Health Ctr., Inc. v. Windler*, 847 S.W.2d 168, 171 (Mo.Ct.App.1993). If the relationship of the parties is that of health care provider and recipient and if the "true claim" relates only to the provision of health care services, the plaintiff must obtain the health care affidavit. *Id.* (plaintiff asserting false imprisonment claim based upon involuntary confinement in psychiatric unit was required to provide affidavit). *See also Vitale v.*

*Sandow*, 912 S.W.2d 121 (Mo.Ct.App.1995) (affidavit was required for libel claims against physicians who informed insurer and employer that plaintiff's physical symptoms were due to malingering); *Jacobs v. Wolff*, 829 S.W.2d 470 (Mo.Ct. App.1992) (plaintiff's tort claims against nurse and medical director of cardiac rehabilitation program required affidavit). The health care affidavit statute would not apply to plaintiff Smith's federal civil rights claims. In any future motion to dismiss, defendant should specify which of Smith's claims it believes to be subject to the statute's requirements and provide citation to authority in support of its position.

The Court also notes that defendant's motion to dismiss is not accompanied by a separate memorandum in support, as required by Local Rule 4.01(A). The Court will address defendant's motion because it includes citation to legal authority in support of the motion. In the future, however, defendant should comply with the requirements of the Local Rules.

as if the case were being tried in state court. *See Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 109, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). A court must ask, "[D]oes it significantly affect the result of a litigation for a federal court to disregard a law of a State that would be controlling in an action upon the same claim by the same parties in a State court?" *Id.* This "outcome-determination" test must be "guided by 'the twin aims of the *Erie* rule: discouragement of forum shopping and avoidance of inequitable administration of the laws.' " *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 428, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996) (quoting *Hanna v. Plumer*, 380 U.S. 460, 468, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965)).

■ Where a matter is covered by a Federal Rule of Civil Procedure, however, the "federal courts must apply the Rule without regard to whether the matter might arguably be labeled substantive or procedural." *Hiatt v. Mazda Motor Corp.*, 75 F.3d 1252, 1258 (8th Cir.1996) (citing *Hanna*, 380 U.S. at 471, 85 S.Ct. 1136). "Thus, the full-blown *Erie* analysis-first determining whether a matter is substantive or procedural and then applying state law on substantive matters-does not apply if the matter in question is covered by a Federal Rule of Civil Procedure." *Id.*

■ Under the principles established in *Hanna*, a federal court exercising supplemental jurisdiction must first determine whether a Federal Rule directly "collides" with the state law it is being urged to apply. *See Hanna*, 380 U.S. at 470–74, 85 S.Ct. 1136. If there is a direct conflict, the Federal Rule must be applied if it is constitutional and authorized by the Rules Enabling Act, 28 U.S.C. § 2072. If a direct conflict does not exist, the federal court applies the *Erie* rule to determine if state law should be applied. *Hanna*, 380 U.S. at 470, 85 S.Ct. 1136. The state law should apply if it is "bound up with [state-created] rights and obligations in such a way that its application in the federal court is required." *Byrd v. Blue Ridge Rural Elec. Coop., Inc.*, 356 U.S. 525, 535, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958).

■ In determining whether a Federal Rule directly conflicts with a state law, a federal court must consider whether the scope of the Rule is "sufficiently broad to control the issue before the Court," *Walker v. Armco Steel Corp.*, 446 U.S. 740, 749–50, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980), "thereby leaving no room for the operation of [state] law." *Burlington Northern R.R. Co. v. Woods*, 480 U.S. 1, 4–5, 107 S.Ct. 967, 94 L.Ed.2d 1 (1987). The Federal Rules are to be given their plain meaning and are not to be construed narrowly to avoid a direct conflict, *see Walker*, 446 U.S. at 750 n. 9, 100 S.Ct. 1978, but "a broad reading [of the Rules] that would create significant disuniformity between state and federal courts should be avoided if the text permits." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 37–38, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988). "Federal courts have interpreted the Federal Rules ... with sensitivity to important state interests and regulatory policies." *Gasperini*, 518 U.S. at 427 n. 7, 116 S.Ct. 2211.

■ In the instant case, plaintiff argues that Missouri's health care affidavit statute conflicts with Federal Rule 26(a)(2), which provides:

(2) Disclosure of Expert Testimony.

(A) In addition to the disclosures required by paragraph [26(a)(1)], a party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence.

(B) Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study

and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

(C) These disclosures shall be made at the times and in the sequence directed by the court. In the absence of other directions from the court or stipulation by the parties, the disclosures shall be made at least 90 days before the trial date or the date the case is to be ready for trial or, if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under paragraph (2)(B), within 30 days after the disclosure made by the other party. The parties shall supplement these disclosures when required under subdivision (e)(1).

Rule 26(a)(2)(A)-(C), Fed.R.Civ.P.

Plaintiff argues that because she has been directed to disclose her expert witnesses' names and reports by March 1, 2005 pursuant to the Case Management Order, it is contradictory to also require her to provide "expert validation" of her claim within 90 days of filing the complaint. Pls.' Mem. Opp. at 3. Plaintiff relies solely on the South Dakota district court's *Serocki* decision in support of her position.

This Court finds that no direct conflict exists between the Missouri health care affidavit statute and Federal Rule 26(a)(2). Rule 26(a)(2)(A) requires a party to identify expert witnesses. Rule 26(a)(2)(B) requires a party to provide a written report prepared and signed by the expert witness which contains a statement of the expert's opinion, the reasons for the opinion, data upon which the expert relied in reaching the opinion, and other additional information as quoted above. Rule 26(a)(2)(C) provides that the court shall direct the timing and sequence of expert disclosure, and provides time limits for such disclosure in the absence of other directions from the court.

In contrast, the Missouri health care affidavit statute requires a plaintiff in a tort action based on the rendering of improper health care to file an affidavit that the plaintiff has obtained a written opinion of a legally qualified health care provider stating that the defendant failed to use reasonable care under the circumstances, and that this failure directly caused or contributed to the damages claimed. § 538.225, Mo.Rev.Stat. This requirement goes beyond what is required by the Federal Rules, but it does not conflict with the Federal Rules.

The purpose of the health care affidavit statute is not to govern the timing and exchange of expert discovery as does Rule 26(a)(2), but rather to assure that medical malpractice claims for which there is no expert support will be terminated at an early stage in the proceedings. *See Mahoney v. Doerhoff Surgical Servs., Inc.,* 807 S.W.2d 503, 507 (Mo.1991) (en banc) (statute was intended to "cull at an early stage of litigation suits ... against health care providers that lack even color of merit, and so to protect the public and litigants from the cost of ungrounded medical malpractice claims."). This state policy can be effectuated without compromising the federal policies concerning disclosure of expert discovery contained in Rule 26(a)(2). Thus, the Missouri health care affidavit statute and Rule 26(a)(2) can coexist, "each controlling its own intended sphere of coverage without conflict." *Walker,* 446 U.S. 740, 752, 100 S.Ct. 1978 (1980). Rule 26(a)(2) is not so broad that it controls the issue before the Court, *see id.* at 749–50, 100 S.Ct. 1978, and it leaves adequate "room for the operation of [state] law." *Burlington Northern,* 480 U.S. at 4–5, 107 S.Ct. 967.

This Court has previously rejected the argument that the Missouri health care affidavit statute is a state procedural rule which cannot be applied in a federal case. *See Spencer v. Missouri Dept. of Corrections,* No. 2:02–CV–003 CEJ, slip op. at 2 (Mem. and Order of June 30, 2004) (Jackson, C. J.). Numerous federal courts have applied similar statutes without finding a direct conflict with the Federal Rules. *See, e.g., Chamberlain v. Giampapa,* 210 F.3d 154 (3d Cir.2000) (holding that New Jersey affidavit of merit statute, which requires an affidavit of a licensed physician to be filed in support of a medical malpractice claim within 60 days after an answer is filed, did not conflict with Federal Rules 8 and 9); *Ellingson v. Walgreen Co.,* 78 F.Supp.2d 965 (D.Minn.1999) (Minnesota statute applied requiring expert

affidavit to be filed in federal diversity tort cases based on medical malpractice; rejecting challenge that Rule 26(a) controlled expert disclosures); *Hill v. Morrison,* 870 F.Supp. 978 (W.D.Mo.1994) (holding Missouri health care affidavit statute did not conflict with Rule 11); *Connolly v. Foudree,* 141 F.R.D. 124 (S.D.Iowa 1992) (finding no conflict between Rule 26(b)(4)(A)(i) and Iowa statute requiring plaintiff in a professional liability case to certify to the court and other parties the expert's name, qualifications, and the purpose for calling the expert within 180 days of the defendant's answer); *see also Wells v. McCarthy,* 432 F.Supp. 688 (E.D.Mo.1977) (plaintiff's malpractice claim in diversity case was properly dismissed for failure to obtain review by professional liability review board as required by then-existing Missouri statute).

Similar statutes have also been routinely applied by federal courts sitting in diversity without engaging in the *Hanna* analysis. *See, e.g., Weasel v. St. Alexius Medical Center,* 230 F.3d 348 (8th Cir.2000) (holding district court was required to dismiss malpractice action under North Dakota law where plaintiff failed to file expert affidavit); *Carmen v. Mayo Found.,* 81 F.3d 165, 1996 WL 137272, *1 (8th Cir.) (unpublished per curiam) (district court properly dismissed malpractice action under Minnesota law with prejudice, where plaintiff failed to comply with Minnesota's expert affidavit requirements), *cert. denied,* 519 U.S. 953, 117 S.Ct. 368, 136 L.Ed.2d 259 (1996); *Bellecourt v. United States,* 994 F.2d 427 (8th Cir.1993) (district court did not err in dismissing medical malpractice claim with prejudice for failure to file expert affidavit required under Minnesota law), *cert. denied,* 510 U.S. 1109, 114 S.Ct. 1049, 127 L.Ed.2d 371 (1994); *Moore v. Ernest–Jackson,* 16 Fed.Appx. 517 (8th Cir.2001) (prison inmate's state law claims were properly dismissed for failure to comply with Missouri health care affidavit statute), *cert. denied,* 535 U.S. 1023, 122

S.Ct. 1618, 152 L.Ed.2d 630 (2002); *Morlan v. Harrington,* 658 F.Supp. 24 (D.N.D.1986) (applying North Dakota expert affidavit statute in diversity case). This Court has routinely applied the Missouri health care affidavit statute in diversity actions without engaging in the *Hanna* analysis. *See, e.g., Robinson v. Thorpe,* 1:02–CV–145 CDP (E.D.Mo.) (Mem. and Order of Apr. 17, 2003) (Perry, J.); *Harty v. Warner–Lambert Co.,* 1:02–CV–90 ERW (E.D.Mo.) (Mem. and Order of Nov. 22, 2002) (Webber, J.); *Gunderson v. Bigg,* 4:95–CV–1072 DJS (E.D.Mo.) (Order of Feb. 1, 1996) (Stohr, J.).

The *Serocki* case relied on by plaintiffs does not compel a different result. As discussed above, this Court finds that no conflict exists between the Missouri health care affidavit statute and the Federal Rules, and therefore declines to adopt *Serocki's* reasoning.[4] In addition, *Serocki* is distinguishable because of differences between the two statutes at issue. The North Dakota statute at issue in *Serocki* provides in pertinent part:

> Any action for injury or death against a physician, nurse, or hospital licensed by this state based upon professional negligence *must be dismissed without prejudice on motion* unless the claimant has obtained an admissible expert opinion to support the allegation of professional negligence within three months of the commencement of the action or at such later date as set by the court for good cause shown by the plaintiff....

N.D. Cent.Code § 28–01–46. (Emphasis added).

The court in *Serocki* concluded that the North Dakota statute conflicted with Rule 26(a) because, *inter alia,* the statute mandates the dismissal of any medical malpractice action where an expert affidavit is not obtained within three months of filing, while the Federal Rules "adopt a case-by-case approach to discovery of experts and identify-

---

4. The Court notes that the portion of the *Serocki* decision on which plaintiffs rely appears to be dictum. In *Serocki,* the district court first determined that the North Dakota statute at issue did not actually require the plaintiff to disclose or file an expert opinion. *Serocki,* 312 F.Supp.2d at 1205. Then, the court found that the plaintiff's

attorney had already filed an affidavit which fulfilled the statute's requirements. *Id.* It seems that either of these findings would have resolved the motion for judgment on the pleadings which was before the court. The district court proceeded, however, to the *Hanna* analysis and concluded the statute conflicted with the Federal Rules.

ing and deterring frivolous actions." *Id.* at 1210–11. In contrast, the Missouri health care affidavit statute does not mandate dismissal for failure to file the expert affidavit. Therefore, the conflict perceived by the South Dakota district court in *Serocki* does not exist in this case.[5]

Because the Court has found no direct conflict between the Missouri health care affidavit statute and the Federal Rules, it proceeds to the second part of the *Hanna* analysis. Applying traditional *Erie* principles, the Court concludes that the Missouri health care affidavit statute is substantive state law which must be applied by this Court sitting in diversity. The statute is outcome determinative on its face, and failure to apply it could lead to forum shopping and the inequitable administration of the law.

Examination of the Missouri health care affidavit statute and its purpose shows that the affidavit requirement is bound up with the rights and obligations created by state law in such a way that its application in federal court is required. *See Byrd,* 356 U.S. at 535, 78 S.Ct. 893. The Missouri statute was intended to "cull at an early stage of litigation" meritless suits against health care providers. *Mahoney,* 807 S.W.2d at 507. "By requiring dismissal for failure to adhere to the statute, the ... legislature clearly intended to influence substantive outcomes. It sought early dismissal of meritless lawsuits, not merely to apply a new procedural rule." *Chamberlain,* 210 F.3d at 161 (discussing New Jersey affidavit of merit statute). "Clearly, failure to apply the statute in a federal diversity action where no affidavit ... has been filed would produce a different outcome than that mandated in a state proceeding." *Id.*[6]

Failure to require a health care affidavit in accordance with the statute could lead to forum shopping and inequitable application of the law. The Third Circuit's discussion of the New Jersey affidavit of merit statute applies equally here:

> In addition to undercutting the state's interest in early dismissal of meritless lawsuits, failure to apply the state statute in federal courts could promote forum-shopping, despite the relatively low hurdle the ... affidavit requirement presents to a legitimate claimant. Plaintiffs who have been unable to secure expert support for their claims and face dismissal under the statute in state court may, by filing in the federal court, be able to survive beyond the pleading stage and secure discovery. The resulting opportunity for a "fishing expedition," which would hold the hope of turning up evidence of a meritorious claim or of a settlement to save defense litigation costs, can reasonably be expected to affect the forum choice of these plaintiffs.

> Failure to apply the [health care] affidavit ... statute also implicates the second of the "twin aims" of *Erie,* avoiding inequitable administration of the laws. A defendant in a federal court that refused to apply the affidavit requirement would be unfairly exposed to additional litigation time and expense before dismissal of a non-meritorious lawsuit could be secured, merely because the plaintiff is a citizen of a different state. Perhaps more importantly, the reputation of the professional involved would be more likely to suffer the longer the lawsuit went on, putting added pressure on the defendant to settle rather than endure extensive discovery.

5. As previously stated, the Eighth Circuit approved the dismissal of a medical malpractice action filed in federal court where the plaintiff did not comply with the North Dakota expert affidavit statute. *See Weasel v. St. Alexius Med. Ctr.,* 230 F.3d 348 (8th Cir.2000). The issue whether the provisions of N.D. Cent.Code § 28–01–46 apply in a federal diversity action apparently was not raised in the *Weasel* case.

6. In *Mahoney v. Doerhoff Surgical Servs., Inc.,* 807 S.W.2d 503, 508 (Mo.1991) (en banc), the Missouri Supreme Court described Section

538.225 as enacting "a *procedure* in suits for personal injury ... caused by negligent health care providers," and stated the statute was not intended to effect a change in substantive medical malpractice law. *Id.* This statement was made in the context of responding to a constitutional challenge to the health care affidavit statute as violating the right to trial by jury. The Missouri Supreme Court was not addressing, and as a state court would not address, the substantive or procedural nature of the statute in the context of the *Erie* and *Hanna* analysis.

*Chamberlain,* 210 F.3d at 161. For these reasons, it would significantly affect the result in this action if the Court were to disregard the Missouri health care affidavit statute. *See Guaranty Trust,* 326 U.S. at 109, 65 S.Ct. 1464.

Finally, the Court must "consider whether any countervailing federal interests prevent the state law from being applied in federal court." *Chamberlain,* 210 F.3d at 161. The Court has previously concluded that the health care affidavit statute does not conflict with the Federal Rules. As a result, its application in federal court "would not disrupt any essential characteristic of the federal system." *Connolly,* 141 F.R.D. at 129. Accordingly, the Court holds that the Missouri health care affidavit statute applies to plaintiff Smith's state law tort claims based on the provision of health care services.

■ The Court must now determine whether plaintiff Smith's tort claims should be dismissed for failure to comply with the statute. The statute authorizes a court to grant an extension of time to file a health care affidavit, for good cause shown. *See* Mo.Rev.Stat. § 538.225.4. In plaintiffs' memorandum in opposition to the motion to dismiss, Smith asserts that good cause exists to allow her additional time to obtain a health care affidavit because she lacks funds to pay for obtaining an affidavit, although she "has been seeking for several months ... physicians who would find the claim valid and who would be affordable in such services." Pls.' Mem. Response at 3. Plaintiff also states as cause that her counsel will be seeking leave to withdraw from the case, as he has joined a practice which declined the case. *Id.*

■ As previously stated, this action was originally filed in October 2001 and remained pending for over a year before plaintiff voluntarily dismissed it in November 2002. Plaintiff then refiled the action in November 2003. Thus, the action has been pending for two years, with a year between the two filings, and plaintiff has not filed the affidavit of a health care provider. Plaintiff's assertions concerning her attorney's desire to be relieved from his obligations in the case do not constitute good cause for a grant of additional time. Plaintiff's assertion of financial inability to obtain a professional opinion may constitute good cause, although plaintiff cannot be excused from compliance with the statute for that reason. The Court will grant plaintiff forty-five days from the date of this order in which to file an affidavit as required by Mo.Rev.Stat. § 538.225. The Court is not inclined to grant any further extensions of time to file the affidavit, given the history of this case as discussed above. Defendant's motion to dismiss should therefore be denied without prejudice. In the event plaintiff Smith fails to comply timely with the Court's order, the Court will entertain a renewed motion to dismiss.

### III. *Motion to Sever.*

Defendant moves in the alternative to dismiss or sever the claims brought by plaintiffs Smith and McMorris, on the basis that they have improperly joined two separate causes of action which arise out of two entirely different sets of facts and different dates of occurrence. Defendant asserts that plaintiffs' claims share no common questions of law or fact.

Plaintiffs respond that the Court allowed plaintiff McMorris to intervene or join in the action when it granted plaintiff Smith leave to amend her complaint, and thus "accept[ed] her allegations that her claim against Defendant contains a common question of law and fact with the original Plaintiff's claim." Pls.' Mem. Response at 4. Plaintiffs also assert that McMorris' claims share a common question of law and fact with Smith's and therefore are properly made a part of this action either by means of permissive intervention under Rule 24(b) or joinder under Rule 20(a). Specifically, plaintiffs assert that they "allege similar claims of fraud and deceptive practices, and both plaintiffs allege civil rights violations by Defendant, on the same grounds, under 42 U.S.C. § 1981 and § 1985. And both Plaintiffs make such allegations out of the same series of transactions (being pregnant and coming into Defendant's facility)." Pls.' Mem. Response at 5.

■ A plaintiff may seek to bring additional parties plaintiff into an action only by amending the complaint. *See* Rule 15, Fed.

R.Civ.P.; 4 James Wm. Moore, et al., *Moore's Federal Practice* § 20.02[2][a][ii] (3d ed.2004). Rule 20(a) governs the permissive joinder of parties into an action. Fed. R.Civ.P. 20(a). Therefore, the Court will examine whether the plaintiffs are properly joined under the standards set forth in Rule 20(a), and will not refer to Rule 24(b).

As previously stated, when plaintiff Smith sought leave to file an amended complaint in this case, she had not yet served defendant with summons and complaint. As a result, plaintiff had the right to amend her complaint under Rule 15(a) and did not need leave of Court to join permissive parties. *See* Rule 15(a). In granting plaintiff's unnecessary motion for leave to amend her complaint, this Court did not address the issue of McMorris' joinder. The fact that plaintiff had the right to amend her complaint and in so doing joined an additional plaintiff does not resolve the issue raised by defendant's motion to sever-whether plaintiff McMorris is misjoined in this action. In order for a plaintiff to properly join additional plaintiffs, the claims must meet the requirements of Rule 20(a) discussed below.

Rule 20(a) provides in pertinent part:

> (a) Permissive Joinder. All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action.... A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded....

Rule 20(a), Fed.R.Civ.P. In addition, Rules 20(b) and 42(b) grant district courts the discretion to order separate trials or make such other orders necessary to prevent delay and prejudice. *Mosley v. General Motors Corp.,* 497 F.2d 1330, 1332 (8th Cir.1974).

The purpose of Rule 20(a) is to address "the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 724, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Nonetheless, permissive joinder is not proper in all situations. To join together in one action, plaintiffs must meet two specific requirements: "(1) a right to relief must be asserted by, or against, each plaintiff or defendant relating to or arising out of the same transaction or occurrence, or series of transactions or occurrences; and (2) some question of law or fact common to all the parties must arise in the action." *Mosley,* 497 F.2d at 1332; *see* Rule 20(a). Joinder is proper only if both of these requirements are satisfied. 4 *Moore's Federal Practice* § 20.02[2][a][ii].

### A. *Same Transaction or Occurrence.*

The Court must first determine whether plaintiffs' claims for relief relate to or arise out of the same transaction or occurrence, or series of transactions or occurrences. A case-by-case approach is used to determine "whether a particular factual situation constitutes a single transaction or occurrence for purposes of Rule 20 ...." *Mosley, id.* at 1333. "No hard and fast rules have been established under the rule." *Id.* In the context of Rule 20(a), the Eighth Circuit stated that " '[t]ransaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Id.* (quoting *Moore v. New York Cotton Exchange,* 270 U.S. 593, 610, 46 S.Ct. 367, 70 L.Ed. 750 (1926)). The Eighth Circuit concluded the same transaction or occurrence requirement of Rule 20 "would permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding." *Id.* In *Mosley,* for example, the Eighth Circuit concluded that ten employment discrimination plaintiffs met the same transaction or occurrence requirement because they each alleged injury as a result of the same general company-wide policy of discrimination against African–Americans on the part of their employer. *Id.* at 1334.

In this case, plaintiffs argue that they allege similar state law claims of fraud and deceptive practices, as well as civil rights violations under 42 U.S.C. §§ 1981 and 1985,

and that the transactions are the same because both plaintiffs were pregnant and came into defendant's facility. The Court finds, based on a careful examination of the factual allegations in the Amended Complaint, that plaintiffs' claims in this case do not arise from the same transaction or occurrence, or series of transactions or occurrences. "Although the same transaction or occurrence requirement of Rule 20 may be construed liberally, this does not mean joinder is proper in the absence of a transactional link." *DIRECTV v. Loussaert*, 218 F.R.D. 639, 642 (S.D.Iowa 2003) (citing *Mosley*, 497 F.2d at 1332).

Plaintiff Smith alleges that she went to defendant's facility in 1999 to investigate the possibility of having an abortion. Smith underwent tests and although she was ambivalent, she eventually had laminaria inserted in order to facilitate the abortion. Smith then changed her mind, and unsuccessfully sought to have defendant's personnel remove the laminaria. Smith had the laminaria removed at a hospital, became ill, and ultimately her fetus died. In Count I, titled "medical malpractice," Smith alleges that (1) defendant failed to properly inform her of the physical and emotional risks associated with abortion, and she suffered damages as a result; (2) defendant's failure to inform her of the physical and emotional risks associated with abortion violates Missouri law requiring informed consent prior to an abortion; and (3) defendant's agents pressured her to have an abortion, which constitutes a gross breach of the duty to satisfy the reasonable standard of care which must be exercised by physicians and their staff. *See* Amended Complaint, ¶¶ 1–31.

In Count II, titled "fraud and deceptive trade practices," plaintiff Smith incorporates paragraphs 1–31 of the Amended Complaint and alleges that defendant's agents and employees made false representations and omissions to her concerning the physical and emotional risks of abortion, and pressured her to have an abortion, resulting in damages. *Id.*, ¶¶ 32–47. In Count III, titled "wrongful death," Smith incorporates the preceding paragraphs of the amended complaint and alleges that because of defendant's failure to inform her of the risks associated with abortion, its failure to show her an ultrasound of her baby, and its refusal to remove the laminaria as requested, she suffered the death of her child and the loss of her child's society, companionship and guidance.

In Count IV, titled "civil rights violations–42 U.S.C. § 1981," Smith incorporates her prior claims and alleges that defendant's actions constituted a pattern of racial and economic discrimination, and that defendant has a history of targeting lower income persons and those belonging to minority groups for abortions, sterilization and contraception, in order to lower the population of those groups and deprive them of their fundamental right to bear children. In Count V, titled "civil rights violations–42 U.S.C § 1985," Smith incorporates all prior paragraphs and alleges that defendant's acts "reflect an intent on its part to commit genocide against Plaintiff and other African Americans, persons of lower socioeconomic status, and other minority groups, and to deprive them of their fundamental right to bear children, in violation of 42 U.S.C. § 1985." Amended Complaint, ¶ 58.

Plaintiff McMorris alleges that she went to defendant's facility in May 2002 to obtain counseling concerning her pregnancy after viewing defendant's advertisement offering counseling services at no cost. McMorris did not intend to seek an abortion. McMorris alleges that defendant required her to undergo medical tests she did not want, despite her protests that she sought only counseling, and its agents were unresponsive to her questions and objections so she attempted to leave the facility. McMorris alleges that defendant restrained her and refused to allow her to leave until she paid it the sum of $100.00.

In Count VI, titled "false imprisonment," McMorris alleges that defendant falsely and maliciously restrained and imprisoned her against her will, causing her to be afraid, intimidated and humiliated, and extorted $100.00 from her to secure her release. In Count VII, titled "fraud and deceptive trade practices," McMorris incorporates the allegations of Count VI and alleges that defendant

made false representations to her concerning free counseling services, as defendant intended that plaintiff either have an abortion or pay money, and did not intend to provide her with free counseling. McMorris alleges that she went to defendant's facility as a result of its false representations, as she never would have gone had she known defendant would treat her as an abortion patient and charge her money. McMorris alleges that as a result of her reliance on defendant's false representation, she was falsely imprisoned by defendant until she paid the money demanded.

In Count VIII, titled "civil rights violations–42 U.S.C. § 1981," McMorris incorporates her prior counts and alleges that defendant engaged in a pattern of racial and economic discrimination by advising, encouraging and "enticing through false advertising" plaintiff to abort her child, and then punished her with false imprisonment and extortion of funds because she chose not to abort. McMorris alleges that defendant targets lower income persons and minority individuals to have abortions, sterilization and to use contraceptives in order to lower the populations of those groups, and to deprive them of their fundamental right to bear children. In Count IX, titled "civil rights violations–42 U.S.C. § 1985," McMorris incorporates her prior paragraphs and alleges that defendant's actions as described in Counts VI–VIII reflect defendant's intent to commit "genocide" against plaintiff and other African–Americans, persons of lower socioeconomic status, and other minority groups, and to deprive them of their fundamental right to bear children.

The foregoing description of the plaintiffs' causes of action illustrates that the claims' factual bases do not arise from the same transactions or occurrences. There are no factual commonalities between the plaintiffs' claims apart from the fact that both women went to defendant's facility while pregnant, and no logical relationship between the claims. Simply put, the claims are unrelated. Plaintiff Smith's claims originate with her ill-fated initiation of an abortion procedure in 1999. Smith's medical malpractice claim is based on defendant's alleged failure to in-

form her of the physical and mental effects of abortion, and a breach of the duty of care owed to her as a patient. Smith's fraud claim is also based on defendant's alleged failure to inform her of the physical and mental risks and effects of abortion. The wrongful death claim is based on the death of Smith's child, allegedly as a result of (1) defendant's failure to inform her of the physical and mental effects of abortion, and (2) its refusal to remove the laminaria.

In contrast, plaintiff McMorris' claims originate with her attempt to obtain free counseling services from defendant in 2002. McMorris' false imprisonment claim is based on defendant's alleged refusal to allow her to leave its facility until she paid it the sum of $100.00. McMorris' fraud claim is based on defendant's alleged false representations with respect to free counseling services.

 Although each plaintiff asserts a fraud claim, the claims are factually and legally distinct because Smith's is based on an alleged omission of material information concerning risks associated with abortion in 1999, while McMorris' is based on defendant's alleged false representations with respect to its offer of free counseling in 2002. As a result, the fraud claims do not arise from a common transaction or occurrence. *Cf. Saval v. BL Ltd.*, 710 F.2d 1027, 1031–32 (4th Cir.1983) (rejecting argument that allegations of fraud and breach of federal warranties concerning similar problems with automobiles satisfied the transactional test); *Papagiannis v. Pontikis*, 108 F.R.D. 177, 178–79 (N.D.Ill.1985) (joinder of plaintiff in securities fraud case improper although nature of defendant's alleged misrepresentation to each plaintiff was similar and each plaintiff claimed violation of the same federal law, where plaintiffs had separate transactions with defendant at separate times).

 Further, although both plaintiffs are African–American and allege that their civil rights were violated based on a pattern of racial and economic discrimination by defendant, the civil rights claims are premised on each plaintiff's factually dissimilar and temporally distinct claims described above. As a result, plaintiffs' civil rights claims are not sufficiently related to constitute the same

transaction or occurrence. *Cf. Bailey v. Northern Trust Co.*, 196 F.R.D. 513, 516 (N.D.Ill.2000) (plaintiffs' claims against their employer under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964 were improperly joined where they arose from distinct and unrelated actions taken by various management personnel); *Smith v. North Am. Rockwell Corp., Tulsa Div.*, 50 F.R.D. 515, 522–23 (N.D.Okla.1970) (civil rights plaintiffs' claims against their employer under 42 U.S.C. § 1981 were not properly joined where they arose from different factual occurrences).

Finally, the mere fact that both plaintiffs became pregnant several years apart and chose to go to defendant's facility for different reasons is not enough of a logical or factual connection to satisfy the same transaction or occurrence requirement. *Cf. Heath v. Bell*, 448 F.Supp. 416, 418 (M.D.Pa.1977) (joinder of federal inmates alleging that United States Parole Commission unlawfully applied its guidelines was not proper where each claim arose from separate factual background, because "the mere fact that a parole decision is involved is not enough to satisfy the same transaction requirement.").

For these reasons, the Court concludes the factual bases underlying the two plaintiffs' claims are too different to meet the required "same transaction or occurrence" test of Rule 20(a).

### B. *Common Question of Law or Fact.*

Plaintiffs also fail to satisfy the second prong of the test for permissive joinder under Rule 20(a)-the existence of a common question of law or fact. As discussed above, the plaintiffs' claims are factually dissimilar. Plaintiff Smith's state law claims for medical malpractice, fraud based on omission of abortion risks, and wrongful death involve different legal issues, standards and procedures than plaintiff McMorris' state law claims for false imprisonment and fraud based on misrepresentations concerning free counseling services. Further, although each plaintiff asserts civil rights claims under 42 U.S.C. §§ 1981 and 1985, the mere fact that these claims arise under the same law does not necessarily establish a common question

of law or fact. *See Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir.1997) (claims under the Administrative Procedure Act did not necessarily establish a common question of law or fact). Because the underlying factual bases for the plaintiffs' civil rights claims are distinct, these claims do not present a common question of law or fact.

As a result, the Court concludes that plaintiffs' claims are misjoined. Defendant's motion to sever the claims should therefore be granted pursuant to Rule 21, Federal Rules of Civil Procedure. Plaintiff McMorris will be granted thirty days in which to file an individual complaint.

### IV. *Conclusion.*

For the foregoing reasons, defendant's motion to dismiss should be denied without prejudice. Plaintiff Smith will be granted 45 days to file the health care affidavit required by Mo.Rev.Stat. § 538.225. Defendant's alternative motion to sever should be granted as the plaintiffs' claims were improperly joined herein. Plaintiff McMorris will be granted 30 days to file an individual complaint, together with the required filing fee.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Planned Parenthood of the St. Louis Region's motion to dismiss is **DENIED without prejudice**. [Doc. 28]

**IT IS FURTHER ORDERED** that plaintiff Nicole Smith shall file the affidavit required by Section 538.225, Mo.Rev.Stat., no later than **January 7, 2005**. In the event plaintiff Smith fails to comply fully and timely with this order, the Court will entertain a renewed motion to dismiss the affected claims.

**IT IS FURTHER ORDERED** that defendant Planned Parenthood of the St. Louis Region's motion to sever is **GRANTED**, and plaintiff Tiffany McMorris is severed from this action. [Doc. 28]

**IT IS FURTHER ORDERED** that plaintiff Tiffany McMorris shall file an individual complaint, to be accompanied by the appropriate filing fee, no later than **December 23, 2004**. Plaintiff McMorris shall notify the

Clerk of the Court in writing that her complaint is being filed pursuant to this order, and the Clerk of the Court shall direct assign the new case to the undersigned. **In the event plaintiff McMorris does not comply fully and timely with the requirements of this order, the Court will dismiss her claims from this action without prejudice.** *See* Rule 41(b), Fed.R.Civ.P.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall assign a new case number to plaintiff McMorris' individual complaint.